Ralph M. **HACKLEY**, Plaintiff,

v.

Donald E. **JOHNSON** et al., Defendants.

Henry F. **FRANKLIN**, Plaintiff,

v.

Melvin **LAIRD** et al., Defendants.

Civ. A. Nos. 1258–72, 2127–72.

United States District Court,
District of Columbia.

July 13, 1973.

G. Richard Plenty, Jr., Brian B. Mc-Menamin, Washington, D. C., for plaintiff Ralph M. Hackley.

Ellen Lee Park, Asst. U. S. Atty., Washington, D. C., for defendants Donald E. Johnson and others.

Melvin M. Burton, Jr., Charles A. Brady, Washington, D. C., for plaintiff Henry F. Franklin.

James M. McGarry, III, Asst. U. S. Atty., Washington, D. C., for defendants Melvin Laird and others.

## MEMORANDUM OPINION

GESELL, District Judge.

Plaintiffs in these cases are Federal Government employees. Each of them claims discrimination on the basis of race and the employment opportunities afforded them by the Government. Dissatisfied with the outcome of administrative hearings, they seek a new trial in this Court, invoking the Equal Employment Opportunity Act of 1972, § 11, 42 U.S.C. § 2000e—16, and other civil rights acts, as well as the Constitution.

■ The central question common to both of these cases is whether or not the Equal Employment Opportunity Act of 1972, amending Title VII of the Civil Rights Act of 1964, requires a United States District Court to hold a trial *de novo* where a plaintiff employed by the Federal Government, after unsuccessfully pursuing his administrative remedies, seeks relief from the Court to vindicate an individual claim of racial discrimination. As far as can be ascertained, this is an issue of first impression. The defendants have brought the issue into sharp focus by filing motions for summary judgment, accompanied by the administrative records, and asserting that the administrative actions taken in each case are amply supported by substantial evidence.[1]

The charges of discrimination were first brought to the attention of the agencies in question in December, 1970, and February, 1971, respectively. Full separate hearings were held in each instance and an appeal was taken to the United States Civil Service Commission (hereafter referred to as "Commission"). In *Hackley,* the claim of discrimination was rejected, while in *Franklin,* the claim was accepted, but the plaintiff was denied certain corrective action which he considered appropriate. As will later appear, each of these administrative proceedings was extensive. The requests now made for a wholly new trial will perforce duplicate much of the administrative record. It is obvious that the ultimate determination of the issue will have a far-reaching effect on litigation involving alleged Title VII discrimination in federal employment and that plaintiffs' position, if accepted, would impose an especially heavy burden on the federal trial courts in this jurisdiction.[2]

After providing essentially that all personnel actions affecting employment in the Federal Government are to be free from any discrimination based on race, color, religion, sex, or national origin, and providing the Commission with a wide range of remedial tools to insure that this explicit mandate will be carried out (42 U.S.C. § 2000e—16(a) and (b)), the statute goes on to provide:

(c) Within thirty days of receipt of notice of final action taken by a

---

1. Preliminarily, the Government has asked the Court to reconsider the denial of its motion to dismiss in *Hackley* and to dismiss both actions on the ground that 42 U.S.C. § 2000e–16 does not apply. The Court reaffirms its prior ruling, applicable in both cases, that for these claims of Federal Government employment discrimination pending before the agencies since 1970 and 1971, the expanded Equal Employment Opportunity Act of 1972 is retroactive.

2. A brief review of the civil docket of the United States District Court for the District of Columbia reveals no less than nineteen similar claims where this issue is potentially present but undecided. Some are class actions. In total, they

cut a wide swath through the agencies of the Federal Government, such as: Agency for International Development; Civil Aeronautics Board; Department of Commerce; Department of Defense; Department of Health, Education and Welfare; Department of State; Department of Transportation; General Services Administration; Library of Congress; National Oceanic and Atmospheric Administration; United States Army; United States Marshals Service; United States Navy. (See Civil Action Nos. 1016–72, 1300–72, 1557–72, 1633–72, 1771–72, 1790–72, 1877–72, 1981–72, 2129–72, 2211–72, 2259–72, 2522–72, 41–73, 55–73, 630–73, 716–73, 874–73, 1081–73, and 1147–73.)

department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e—5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

The grant of jurisdiction to the Federal Courts leaves open how that jurisdiction should be exercised. Traditionally the courts have been somewhat loath to interfere with federal employment standards. Gradually the courts have moved from a flat denial of jurisdiction to a review limited to statutory compliance and procedural due process, to requiring proof of an affirmative exercise of discretion, to a search for substantial evidence supporting the action, and, recently, to the rational-basis test. *See* Polcover v. Secretary of the Treasury, 477 F.2d 1223 (D.C.Cir. 1973). These have been the progressive standards in discharge and other federal employment cases but resolution of the controversy has always been on the administrative record.

Obviously a trial *de novo* would involve a very different approach. It would obviate the necessity of a review under any standard and would guarantee an independent cause of action in all cases where discrimination based on race, color, religion, sex, or national origin is claimed in federal discharge or promotion eligibility situations.

A search of the legislative history[3] and consideration of the Act's language reveals no clear-cut congressional determination to require trial *de novo* as a matter of right nor does the Act itself specify the standard of review short of this which Congress may have contemplated would be applied.

While the congressional reports and debates are not extensive with respect to the narrow question at hand and leave the matter unresolved, two themes are dominant throughout. Congress attempted to deal with what it viewed as unsatisfactory achievement by the Federal Government's employment of minorities on a non-discriminatory basis. First, Congress was concerned with the ineffectiveness of the existing Civil Service Commission and agency complaint process. Procedures were complicated and vague. The process was long and often overwhelming to an individual employee contesting his agency. Employees found it difficult to receive a truly independent investigation. In the end, the agency judged its own culpability, often without guidance of explicit standards. Besides these structural defects, the administrative process including the Civil Service Commission aspects, was thought to be insensitive and inexpert in the field of discrimination. Too often cases went off on whether there was a specific evil intent without examining the subtle and seemingly neutral practices which in effect imposed discriminatory barriers. It was an uphill fight for any civil servant, not very rewarding in result and stultifying in effect. The confidence of minorities in fair play by the agencies and the Commission appeared low.

3. See Senate Comm. on Labor and Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Sess. (1972). [Hereinafter cited as History.]

There was also a second set of problems Congress perceived facing a complainant. The courts exercised no effective control over agency decisions. The doctrines of exhaustion of remedies and sovereign immunity had become barriers to meaningful court review.[4]

There was much and often confusing debate as to how these difficulties should be remedied. On the issue of federal employees, as on most other issues, the final version of the Act that passed the Congress was a compromise. For federal employees, proposals putting enforcment in the hands of the Equal Employment Opportunity Commission were dropped in favor of continued jurisdiction by the Civil Service Commission, with a right to file "a civil action" in the Federal Courts. Accepting its assertion of good faith, Congress was willing to continue to rely on the Civil Service Commission and gave it added authority. At the same time, Congress enhanced the rights of federal employees in fundamental ways. First, the Commission's enforcement machinery was to be strengthened to make it fair and effective so that investigations and resolutions of complaints would be complete and impartial. Congress directed the Commission to expand its expertise on discrimination and imposed various implementing requirements. Systemic discrimination was to be attacked by re-examination of the entire testing and qualification program. A broad range of remedies could be invoked and agencies were to develop affirmative plans of action and continually report their progress to the Commission.[5] The Commission has lived up to these obligations by putting into effect comprehensive new regulations to meet the concerns of Congress. Clear-cut complaint procedures protect individuals as well as groups and broad classes of complainants, and new obligations are imposed on the agencies. 5 C.F.R. Part 713 (1973).

■ The second congressional thrust was the provision of the Act in question here, which guaranteed federal employees a right of access to Federal Courts. 42 U.S.C. 2000e—16(c). On its face, the statute is silent as to the court's duty. To be sure, some legislative history refers to federal employees having the "full rights available in the courts as are granted to individuals in the private sector under Title VII."[6] Phrases such as this must be put in their proper context. Congress clearly left primary responsibility for enforcement of these rights within the Civil Service Commission. A fair reading of the statute shows that the courts and the Commission are to work together and complement one another's weaknesses and strengths. Neither can ignore the role the other plays. Viewing the Act and its history broadly, Congress intended to guarantee *access* to the courts —"a civil action"—to eliminate previous barriers but not to start the process anew.

That the Courts would exercise this supervisory role is best supported by the remarks and analysis of Senator Williams, Chairman of the Senate Committee on Labor and Public Welfare, the committee with jurisdiction over the Act, and a principal sponsor who helped manage the bill on the Senate floor. According to Senator Williams, "an aggrieved Federal employee [is able] to file an action in U.S. District Court for a

4. For examples of these congressional concerns, see H.R.Rep.No.92–238, 92d Cong., 1st Sess. 22–26 (1971) ; S.Rep.No.92–415, 92d Cong., 1st Sess. 12–17 (1971) ; 118 Cong.Rec.S2279–2281 (daily ed. Feb. 22, 1972) (remarks of Senator Williams) (also published in History, 82–86, 421–426, 1725–1730).

5. S.Rep.No.92–415, 92d Cong., 1st Sess. 12–17 (1971) ; 118 Cong.Rec.S2279–81 (daily ed. Feb. 22, 1972) (remarks of Senator Williams) (History 421–426, 1725–30).

6. Sen.Rep.No.92–415, 92d Cong., 1st Sess. 16 (1971) (History at 425). *See also* 118 Cong.Rec.S2280 (daily ed. Feb. 22, 1972) (remarks of Senator Williams) (History at 1727).

*review of the administrative proceeding record* after a final order by his agency or by the Civil Service Commission" (emphasis added).[7] He inserted into the record an analysis of the bill which states:

> An important adjunct to the strengthened Civil Service Commission responsibilities is the statutory provision of a private right of *action of review of the agency proceedings* in the courts by Federal employees who are not satisfied with the Agency or Commission decision.
>
> . . . Moreover, the remedial authority of the Commission and the courts has also been in doubt. The provisions adopted by the Committee will enable the Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. Aggrieved employees or applicants will also have the *full rights of review available in the courts*.[8]

This conclusion is also supported by the rest of the Act's language[9] and by common sense. It is clear the Court was authorized to act if the administrative process was delayed. Congress wanted prompt and consistent decisions in these discrimination matters. A trial *de novo* does not accomplish this but rather works in the opposite direction for a wholly new record must be made and opportunity for reasonable discovery provided. Moreover, it is difficult, as the present cases illustrate, to differentiate between pure discrimination claims and the underlying intricacies of civil service regulations governing job qualification selection for promotion, training and the like. The Commission's growing expertise in civil rights matters, coupled with its pre-eminent expertise in these latter areas, emphasizes that an automatic trial *de novo* will not serve the laudable purpose of the Act.

The Federal Courts are free to act in whatever manner may be appropriate, case by case, consistent with experience and precedent. Precious rights of individuals are involved and these must not be obfusticated by procrustean adherence to standards of review that are more semantic than substantial. There is a need to establish an especially high standard of review in government employment cases involving aspects of discrimination prohibited by the Civil Rights Act of 1972, but an interpretation that embraces an automatic requirement of trial *de novo* in all instances with all its inherent uncertainties and substantial delays will defeat rather than advance the Act's objectives.[10]

■ The trial *de novo* is not required in all cases. The District Court is required by the Act to examine the administrative record with utmost care. If it determines that an absence of discrimination is affirmatively established by the clear weight of the evidence in the record, no new trial is required. If this exacting standard is not met, the Court shall, in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record.

Discrimination is a subtle fact. It is as difficult to identify as the origin and causes of many odors. If it is present anywhere in the federal establishment, it must be promptly extinguished.

7. 118 Cong.Rec.S2280 (daily ed. Feb. 22, 1972) (History at 1727). *See also* 118 Cong.Rec.S2287 (daily ed. Feb. 22, 1972) (remarks of Senator Cranston) (History at 1744).

8. 118 Cong.Rec.S2281 (daily ed. Feb. 22, 1972) (History at 1730) (Emphasis added).

9. Only the "applicable" provisions of 42 U.S.C. § 2000e–5(f) through (k) govern civil actions brought by federal employees. 42 U.S.C. § 2000e–16(d).

10. Since under the Act the Court can appoint a master to hold a hearing and make a report, a requirement that there be a trial *de novo* would be contradictory because the administrative record is in fact a master's report.

Those who feel aggrieved, once having brought forward any proof suggestive of discrimination, are entitled to require those most cognizable of the relevant employment practices to come forward and disprove the accusation by the clear weight of the evidence. Examination of the two administrative records before the Court in the light of the above determination is now appropriate.

Plaintiff Franklin, in Civil Action No. 2127–72, has been employed since November 23, 1969, at Walter Reed Army Medical Center (hereinafter referred to as "WRAMC"), beginning at the GS–7 level as a career intern in the Supply Management field. The basis of his complaint here and at the agency level is that due to racial discrimination his status as an intern was ignored for one year, and consequently he has been denied his rightful opportunity to receive the appropriate training and thereby progress to the GS–11 level.

Once his improper status was officially acknowledged, Franklin was promoted to GS–9, in December, 1970, and promised the training then owed him. However, shortly thereafter he filed a discrimination complaint which was withdrawn in March, 1972, upon apparent informal resolution of the grievance. When further misunderstandings arose, the complaint now before the Court for review was initiated. The Army Civilian Appellate Review Office found no discrimination but the United States Civil Service Commission Appeals Examiner, after 250 pages of testimony, found for the plaintiff, rejecting the claim of WRAMC that Franklin's non-recognition as an intern, like the non-recognition of interns who were white, was due to poor communication among the WRAMC bureaucracy.

Plaintiff had further complained that he was in a training program that targeted him for promotion beyond GS–9, but the Examiner's findings are silent on this. He recommended that plaintiff be placed in another intern program within WRAMC, but outside the Logistics Division, at the same salary level with a clear definition of the target position, training and evaluation and an opportunity to compete equally; that the plaintiff's leave and production records on matters caused by his efforts to prosecute his claim be expunged; and that Equal Employment Opportunity personnel should review his progress.

██ The Department of the Army took the action recommended by the Examiner except there was no transfer out of Logistics, and he remained a GS–9 with all of his training programs targeted for that grade scale. Plaintiff appeals to the Court to reverse the decision of the Board of Appeals and Review, United States Civil Service Commission, affirming the Department of the Army action. However, this cannot be done because the essential aspects of the Board's decision are supported by a preponderance of evidence in the record.

Franklin complains of the review decision because his appellate request to be an intern in the Personnel Management Career Program with entrance grade of GS–9 and target grade of GS–13 was rejected. The rejection is, however, justified. Franklin entered Logistics at GS–7 with a target of GS–9. There is no evidence Franklin was ever given a higher target. GS–9 is considered the journeyman level at which the internship in Logistics is terminated. Thereafter advancement to GS–11 is competitive, and is relatively difficult because Logistics at WRAMC is a small unit warranting but a single GS–11 position. The training continues, but automatic promotion cannot. The Army has helped Franklin find other possible GS–11 positions ouside WRAMC for which he is qualified but there is no indication he has applied. As to entering this particular new field at the same GS–9 level, such corrective action is not possible because Franklin does not possess the necessary two years of specialized experience for entrance into Personnel Management at that level.

██ However, the Examiner's recommendation was not limited to a transfer

at GS–9 level in Personnel, and plaintiff's objection to the Board's interpretating the recommendation in such a manner is well taken. In order to make him whole for his experiences, Franklin must be given all opportunities to transfer to any position at GS–9 for which he is qualified, though not necessarily as an intern unless otherwise eligible, either at or outside of WRAMC, in or out of Logistics. Accordingly, in Civil Action No. 2127–72, defendants' Motion for Summary Judgment affirming the decision of the Appeals Board shall be granted in part and the Appeals Board decision is modified as indicated above.

█ Plaintiff Franklin also seeks to pursue this matter as a class action, but because summary judgment has been granted as to his individual claim, he can no longer be representative of any class and the class theory is improper. This would be true even if summary judgment were unwarranted, because Franklin's complaint before the Court goes only to the adequacy of the corrective action taken on his behalf.[11]

Plaintiff Hackley, in Civil Action No. 1258–72, complains that after one year's service as an investigator at GS–12 he has been denied promotion to GS–13 by the Veterans' Administration because he is black. A hearing was held at which the plaintiff was represented by counsel, and after seven days of testimony reflected in 985 pages of transcript, the Appeals Examiner found no discrimination but recommended better lines of communication between supervisors and employees. The Veterans' Administration adopted the Examiner's findings and decision and after obtaining some additional evidence on the relative treatment of whites and minorities by the defendants, the Board of Appeals and Review, United States Civil Service Commission, affirmed.

Hackley claims there was a racial climate when he was first hired, reflected in part by the racial epithets used by his middle-level supervisors and by the total absence of blacks working in this area which resulted in (1) his being required to take additional training, and (2) not progressing properly to GS–13, his hiring at GS–7 and his earlier prompt promotions to GS–9, GS–11 and GS–12 due to the existence of a black Director of Investigation and Security Service during that period.

Plaintiff's claim is rejected by the administrative agency because (1) he required more training since he was less experienced and (2) the same middle-level supervisors supposedly discriminating against Hackley promoted Hackley to GS–12, promoted a Mexican-American to GS–13 with only 14 months' experience, and denied promotions to whites with far greater experience than Hackley. Here plaintiff claims once more that the administrative record and decision ignore the fact that minority hirings and promotions only occurred during the tenure of a black Director.

Plaintiff's claim must fail. Not only is there no proof that plaintiff received promotions only because at that time he had a black Director who recognized his worth, but there is repeated affirmative evidence in the administrative record making it crystal clear that plaintiff's promotions to GS–12 and his failure to achieve GS–13 are solely related to his qualifications. Plaintiff entered this field with substantially less than the normal relevant investigative experience. Progression to GS–12 was normal as it is rather automatic to proceed one grade scale in about one year if work is satisfactory. However, the GS–13 level is another matter. Such an investigator is judged to be capable of handling any investigation in any program at any level.

---

11. There is yet another reason that probably prevents this action from proceeding as a class matter. It appears to the Court that Franklin's complaint did not present, nor did the agency *sua sponte* investigate this matter as a class action problem, an opportunity clearly provided by the new regulations of the United States Civil Service Commission. Therefore, if the Court had to reach the question, which it does not, it is probable the matter could not now proceed as a class because of a failure to exhaust administrative remedies.

At this stage, Hackley's superiors must make a management judgment peculiarly within their own expertise. Their judgment that Hackley is still unqualified for GS–13, though his work is satisfactory at his present level, made after normal evaluations, is completely supported by the record. His performance has sometimes been erratic and improvements are necessary in his investigative judgment, attention to detail, and preparation of accurate, readily understandable reports that follow the format preferred by management. Hackley has made excellent progress and management feels he has a bit further to go. This is not discriminatory treatment. He has very little investigative experience compared to most of his colleagues and therefore quite properly he is required more frequently to assist another investigator in the handling of cases before he gets many complex cases on his own. Moreover, many whites with far more experience have remained at GS–12 for a greater length of time before promotion to GS–13. Accordingly, the administrative decision finding no discrimination is supported by a preponderance of the evidence and defendants' Motion for Summary Judgment shall be granted.