Mary Ann ABRAMS, Plaintiff,

v.

Donald E. JOHNSON, Administrator of Veterans Affairs, Defendants.

No. C 73–878.

United States District Court,
N. D. Ohio, E. D.

Feb. 21, 1974.

Joseph A. Cipollone, Asst. U. S. Atty., Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Defendant has moved for summary judgment. As a preliminary question it is crucial to settle whether the issues raised in plaintiff's complaint should be tried solely on the administrative record as defendant contends, or de novo as plaintiff urges. The administrative record contains the complete history of the investigation, hearing, and appeals which followed plaintiff's complaint of racial discrimination that was lodged by the plaintiff against the Administrator of the Veterans Administration Hospital in Brecksville, Ohio.

### I.

Plaintiff requested promotion from her position as Secretary, Social Services Section, Level GS–5, to the position of Chief, Ward Administration Section, Medical Administration Division, Level GS–7. She was informed her promotion application had been denied on August 7, 1972. Plaintiff then invoked the race discrimination grievance procedures mandated by the Equal Employment Opportunity Act Amendments of 1972, 42 U.S.C. § 2000e–16. This procedure is detailed in 5 C.F.R. Part 713, Subpart B.

Utilizing 5 C.F.R. § 713.213, plaintiff contacted her Equal Employment Opportunity counselor, Imena A. Handy, to discuss her grievance and to determine whether or not the matter could be resolved informally. The counselor was unable to resolve the matter to the plaintiff's satisfaction. Subsequently she filed a formal complaint on September 20, 1972, with the Equal Employment officer at the VA Hospital, Dr. Paul B. Eib. An investigation of the complaint ensued. It was conducted by Miss Gladys Bolling, Equal Employment Opportunity investigator, on October 11–13, 1972, at the VA Hospital.

Robert E. Sweeney, Sweeney, Mahon & Vlad, Cleveland, Ohio, for plaintiff.

The investigator interviewed the complainant and all hospital personnel involved in the matter and studied relevant documents. On November 6, 1972, the investigator submitted to Dr. Eib her report in which she concluded that Mrs. Abrams' failure to be promoted to the position in question, as well as the other incidents mentioned in her complaint, did not result from racial discrimination.

On November 9, 1972, Mrs. Abrams was notified of her right to a hearing conducted by an appeals examiner appointed by the Regional Office of the United States Civil Service Commission. On November 15, 1972, Mrs. Abrams requested such a hearing and Mr. Thomas J. Medaglia, a U. S. Civil Service investigator, was appointed to conduct it. Prior to the hearing Mrs. Abrams was permitted to submit a statement containing her contentions as well as a list of those persons whom she wished to call as witnesses. Of the seven witnesses listed by her, four were called by the examiner, the examiner having determined that the testimony of the other three would not be relevant and material to the issues raised in the complaint.

The hearing was conducted on December 19, 1972, at the VA Hospital in Brecksville. Mrs. Abrams was represented by counsel. Each side examined and cross-examined witnesses. Documents were received into evidence. Rulings on the admissibility and relevancy of testimony were made by the examiner. The transcript of the hearing, which lasted a full day, is 259 pages in length. Following the hearing the examiner reviewed the personnel file of the candidate who received the position to which Mrs. Abrams had aspired. This file had not been placed in evidence at the hearing.

On February 22, 1973, the examiner submitted his findings and recommendations to the Director, Equal Employment Opportunity of the Veterans Administration in Washington, D. C. After a detailed discussion of the testimony and documents in evidence, the examiner concluded that "Mr. McGee's selection of Mrs. Wehner did not have any racial overtones." (Record p. 75) As to Mrs. Abrams' allegations that her three previous attempts at promotion had also failed because of racial discrimination, the hearing examiner found that "complainant's allegation is not substantiated, to any degree, by the evidence of record." (Record p. 75) Finally, as to Mrs. Abrams' claim that the processing of her suggestion concerning television training courses indicated racial discrimination, the examiner determined that "the evidence of record does not establish that the delay in the decision on her suggestion was due to racial discrimination." (Record, p. 76) These recommendations of the hearing examiner were accepted by Mr. Kenneth M. Meyer, Acting Assistant General Counsel of the Veterans Administration, who notified Mrs. Abrams on March 7, 1973, that the decision of the Veterans Administration was final, but that she had a right to appeal that decision to the Board of Appeals and Review of the Civil Service Commission.

On March 21, 1973, Mrs. Abrams filed her appeal with the Board of Appeals and Review. Appended to her formal appeal brief were Mrs. Abrams' comments on the findings and recommendations of the hearing examiner, plus other documents to support her contentions. On July 19, 1973, after a review of these new materials as well as the record compiled at the agency level, Mr. William P. Berzak, Chairman of the United States Civil Service Commission, affirmed the final decision of the Veterans Administration. While noting that "the Board's basic review is limited to matters covered by the agency's decision of March 7, 1973," Mr. Berzak added that

. . . some comments will be noted in this decision regarding the alleged discriminatory conduct which occurred previously in order to make a determination regarding whether a 'pattern' of discriminatory conduct existed which could be considered in establish-

ing the validity of the instant allegation. (Record, p. 6)

Mr. Berzak ultimately concluded that the evidence did not support any finding of racial discrimination in the immediate promotion. Nor did it support a finding of a pattern of discrimination extending over a period of time. He informed Mrs. Abrams that although she had no further right to an administrative appeal, she did have the right to file a civil action in a United States district court.

Thereafter this action was commenced in this court on August 20, 1973, within the 30-day limitation. Defendant Administrator of the Veterans Administration filed a motion to dismiss or in the alternative for summary judgment on December 18, 1973, and a supplemental brief on January 18, 1974. Plaintiff responded with a brief in opposition on January 23, 1974.

## II.

The Equal Employment Opportunity Act of 1972 (herein referred to as the 1972 Act) amends Title VII of the Civil Rights Act of 1964. The 1972 Act added section 717, 42 U.S.C. § 2000e–16. Section 717(a), 42 U.S.C. § 2000e–16(a) directs that "All personnel actions affecting employees or applicants for employment [of the Federal Government] . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." Thus the anti-discrimination prohibitions of Title VII are expressly made applicable to Federal Government employment, just as the 1972 Act also made Title VII applicable to state and local governments.

Section 717(b), 42 U.S.C. § 2000e–16(b), authorizes the Civil Service Commission

to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue

such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section.

It is immediately evident that whereas the EEOC is established by Title VII to administer delegated functions and powers under Title VII as to private employment, section 717(b) vests the foregoing authority in the Civil Service Commission as to Title VII responsibilities with reference to Federal Government employment. The lengthy investigations, hearings and appeals in Mrs. Abrams' case have been conducted in accordance with the regulations (5 C.F.R. § 713.201 et seq.) promulgated by the Civil Service Commission under section 717(b) of the Act.

Establishing the right of an aggrieved employee or applicant for employment to file a civil action, section 717(c), 42 U.S.C. § 2000e–16(c) provides in relevant part

Within thirty days of receipt of notice of final action taken by a department, agency or unit . . . or by the Civil Service Commission upon an appeal from a decision or order of such department, agency or unit on a complaint of discrimination based on race, color, religion, sex or national origin brought pursuant to subsection (a) of this section . . . an em- *ployee or applicant for employment, if* aggrieved by the final disposition of his complaint . . . *may file a civil action as provided in section 2000e–5 of this title* [dealing with private employees], in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." [Emphasis added.]

Concerning such civil action section 717(d), 42 U.S.C. § 2000e–16(d), states

The provisions of section 2000e–5(f) through (k) of this title, *as applicable,* shall govern civil actions hereunder. 42 U.S.C. § 2000e–16(d). [Emphasis supplied.]

Section 2000e–5(f) through (k) does not explicate the nature of a civil action

that may follow the conclusion of EEOC proceedings. However, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) with obvious endorsement of rulings of courts of appeals the Supreme Court has declared,

> in view of the large volume of complaints before the [Equal Employment Opportunity] Commission and the nonadversary character of many of its proceedings, "*court actions under Title VII are de novo proceedings* and . . . a Commission 'no reasonable cause' finding does not bar a lawsuit in the case." [Citations. Emphasis supplied.]

██ As used by the courts of appeals, and quoted with approval by the Supreme Court in McDonnell Douglas Corp. v. Green, *supra* the term "trial *de novo*" is intended to mean that the district court shall try the civil action and its charge of discrimination in private employment without reference to the "reasonable cause" finding of the EEOC. The Supreme Court refers to the "non-adversary character" of the proceedings of the EEOC. Although the 1972 Act has now empowered the EEOC to file suit to prevent unlawful employment practices by a private employer, in other respects the general function and powers of the EEOC have remained the same. The Commission continues to perform investigative and conciliatory functions; and its powers are designed to carry out those functions. The findings of the EEOC are not adjudicative. If the EEOC finds no reasonable cause to believe the truth of an employee's charge of discrimination that finding does not bar an employee's prosecution of a civil action, as *McDonnell Douglas Corp.* holds. A converse finding of "reasonable cause" could not be used to favor the employee nor to bind the employer. Therefore, it is appropriate to describe the trial of a civil action pursuant to final action of the EEOC as a trial *de novo*.

██ But the trial of a civil action following final action by the EEOC is also a trial *de novo* in a different sense as well. No evidentiary record is developed before the EEOC that is intended for use at any subsequent trial. In fact, section 2000e–5(b) provides

> Nothing said or done during and as a part of such informal endeavors [conference, conciliation, and persuasion] may be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned.

Of necessity, therefore, in the trial of the subsequent civil action an evidentiary record must be developed *de novo*. As in any civil action in a district court pretrial discovery procedures under the Federal Rules of Civil Procedure are available to the parties; and at the trial witnesses may be called, exhibits, the answers to interrogatories, depositions and admissions may be offered in evidence.

As seen, the pertinent provisions of section 717, 42 U.S.C. § 2000e–16 do not ordain that a civil action filed by a federal employee against the head of, his department pursuant to section 717(c) shall exactly track the civil action which a private employee may file against his employer under 42 U.S.C. § 2000e–5. Indeed, it is only "as applicable" that section 717(d), 42 U.S.C. § 2000e–16(d) specifies that "The provisions of section 2000e–5(f) through (k) of this title . . . shall govern civil actions hereunder." When those subsections are examined it is clear that several can only apply to proceedings that the EEOC or the Attorney General of the United States can bring; and these have no application to the Civil Service Commission. It is also evident that none of these subsections either expressly or impliedly refer to a trial *de novo*. Accordingly, it must be determined under Title VII, as made applicable to Federal Government employment, whether or not a civil action filed by an aggrieved federal employee in district court after final action by the Civil Service Commission is

a trial *de novo* in either or both uses of the term, as mentioned above.

The Title VII functions and powers of the Civil Service Commission under section 717 of the 1972 Act in various respects differ from the Title VII functions and powers of the EEOC. Expressly authorized by section 717(b) the Civil Service Commission has adopted regulations that require the head of each federal agency to establish, maintain, and carry out "a continuing affirmative program designed to promote equal opportunity in every aspect of agency personnel policy and practice in the employment, development, advancement, and treatment of employees," 5 C.F.R. § 713.203. By its regulations 5 C.F.R. § 713.211–.222 the Civil Service Commission requires each agency to provide a grievance procedure for filing and processing of employee grievances and complaints of discrimination; for investigation of complaints; for adjustment of complaints; for hearings of complaints before examiners; for making a hearing record; for findings and recommendations by the hearing examiner; for decision by head of agency or designee. In addition, the *regulations of the Civil Service Commission*, 5 C.F.R. § 713.231 provide for an appeal to the Board of Appeals and Review of the United States Civil Service Commission; and permit a review by the Commissioners. Other pertinent regulations, 5 C.F.R. § 713.271, provide for remedial actions including reinstatement, back pay, retroactive promotion when an agency or the Civil Service Commission finds that an applicant for employment or an employee "has been discriminated against."

■ The term trial *de novo* used in *McDonnell Douglas Corp., supra* has been shown to mean that the determination of the EEOC shall not be binding on either party in the trial of the subsequent civil action. Applying this use of the term, it must be decided what effect, if any, shall be given in a subsequent civil action to the determination of the Civil Service Commission that the aggrieved employee has not been discriminated against. The position of the defendant head of agency is that the role of the district court is limited to a review of the Civil Service Commission record to determine whether the Commission has failed to comply with applicable laws and procedures, has acted arbitrarily and capriciously, or has not based its findings on substantial evidence. These are the standards of judicial review that are applied in the review of administrative agency decisions under 5 U.S.C. § 706. However, the limiting language of section 706 is not contained in section 717(c), 42 U.S.C. § 2000e–16(c) that authorizes the aggrieved employee to "file a civil action as provided in section 2000e–5 of this title." This latter unrestricted provision is interpreted to give to the district court the same authority to judge an action against a federal agency, charged with violating Title VII's prohibitions against discrimination in employment, as the court has in judging an action against a private employer charged with a violation of Title VII. It is concluded that in this civil action this court does more than judicially review the administrative action of the Civil Service Commission. Rather this court is required on the evidence before it to make an independent judgment as to whether the plaintiff has proved her charge that she has been discriminated against in violation of section 717 of Title VII.

■ However, as seen, a further use of the term trial *de novo* arises under Title VII. Title 42 U.S.C. § 2000e–5(b) prohibits the use of evidence developed in the non-adversary proceedings of the EEOC unless the parties consent. This prohibition is not contained in section 717 of Title VII, and it does not apply to the Civil Service Commission. It has been seen that pursuant to authority granted by section 717(b) the Civil Service Commission has established elaborate machinery to conduct adversary proceedings in order to resolve the Title VII discrimination complaints and grievances at the agency level, and if not there, then on an appeal to the Civil

Service Commission. In the course of these adversary proceedings the employee is given an opportunity to appear, to request that witnesses be called, and to be represented by counsel, and to participate in the preparation of the administrative record. These rights have been accorded the plaintiff in this case. It is concluded that section 717(c), 42 U.S.C. § 2000e–16(c) in providing for a civil action does not require that the administrative record developed by the Civil Service Commission should be scrubbed and a new evidentiary record developed from scratch in this civil action.

Within the contemplation of section 717 of the 1972 Act it is determined that the administrative record shall constitute the evidentiary record in this civil action, subject to supplementation within the discretion of the district judge. In the interest of justice, if critically relevant evidence, not a part of the administrative record, is offered, it may be added to that record upon the satisfaction of one or more of the following criteria. If the witness was not known to a party during the adversary proceedings, if the witness was not then available to testify at the hearing before the hearing examiner, if the hearing examiner improperly refused to allow a witness to testify, or if additional documentary evidence satisfies one of the above criteria, then the district court in its discretion may permit the administrative record to be supplemented by the calling of such witness or by the receipt of such documentary evidence. Hence, it is essential for this court to first ascertain whether there is any request by either party to supplement the record, and if there is such a request to hear and determine whether such request should be granted.

■ ■ Once the evidentiary record upon which this civil action is to be heard is finally closed, in the exercise of its independent judgment, the court will then determine whether the plaintiff has established by a preponderance of the

evidence her claim of discrimination in violation of Title VII. *McDonnell-Douglas Corp., supra* holds that

> The complaint in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.

The pronouncements of the Court in fixing "the order and allocation of proof" although rendered in the context of a "private, non-class action challenging employment discrimination" are deemed applicable to this civil action of a Federal Government employee charging Title VII employment discrimination against her agency.

A study of the legislative history does not point to a reading of congressional intent that conflicts with the foregoing interpretation of section 717 of the 1972 Act. As Judge Gesell concludes in Hackley v. Johnson, 360 F.Supp. 1247, 1250 (D.D.C.1973) after a lucid and exhaustive analysis of the legislative history and the 1972 Act,

> A search of the legislative history and consideration of the Act's language reveals no clear-cut congressional determination to require trial *de novo* as a matter of right nor does the Act itself specify the standard of review short of this which Congress may have contemplated would be applied.

It is apparent that Judge Gesell is speaking of a trial *de novo* in the sense of conducting a wholly new trial without regard to the administrative record developed in the Civil Service Commission. He had quoted Senator Williams, one of the sponsors of the bill, whose statement ended

> Aggrieved employees or applicants will also have the *full rights of review available in the courts.*

Judge Gesell then declares:

> This conclusion is also supported by the rest of the Act's language and by common sense. It is clear the Court was authorized to act if the administrative process was delayed. Congress wanted prompt and consistent deci-

sions in these discrimination matters. A trial *de novo* does not accomplish this but rather works in the opposite direction for a wholly new record must be made and opportunity for reasonable discovery provided. *Hackley, supra* at 1252.

It is also evident that Judge Gesell determines that the district court should make an independent determination of fact based on the "clear weight of the evidence" in the administrative record, which in the discretion of the district court might be supplemented. He states

> The trial *de novo* is not required in all cases. The District Court is required by the Act to examine the administrative record with utmost care. If it determines that an absence of discrimination is affirmatively established by the clear weight of the evidence in the record, no new trial is required. If this exacting standard is not met, the Court shall, in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record. *Id.* at 1252.

In some respects the procedure which this court has determined it should follow in the trial of this civil action varies from the procedure just described by Judge Gesell. The difference arises really at two points. It is concluded that the supplementation question should be resolved before the court proceeds to render its independent judgment of the evidentiary record. Also, applying *McDonnell Douglas Corp., supra,* it is concluded that the initial burden of proof rests upon the plaintiff in this Title VII civil action, and not on the agency, as Judge Gesell determines.

Upon the grounds stated, and for the reasons given, defendant's motion for summary judgment is denied. Consistent with the procedure previously specified the court shall conduct a hearing to determine whether the administrative record should be supplemented.

It is so ordered.