James H. SMITH, Jr.

v.

Daniel J. SNYDER, Regional Administrator, Environmental Protection Agency.

Civ. A. No. 74-594.

United States District Court, E. D. Pennsylvania.

Sept. 19, 1974.

**1084**

Eugene E. Kellis, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., and Frank J. Bove, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

Defendant has filed a motion to dismiss or in the alternative for summary judgment. Attached thereto is a certified copy of the administrative record of the Environmental Protection Agency.

The plaintiff's complaint alleges that his dismissal from employment with the Program Planning and Development Assistance Branch of the Environmental Protection Agency's regional office in Pennsylvania was the result of discrimination based upon his race or color in violation of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 et seq. The relief requested is a declaratory judgment as to his rights; a permanent injunction to restrain alleged discriminatory practices with respect to conditions and privileges of employment; reinstatement and back pay.

The record shows that plaintiff began serving in the position of Chief, Program and Development Assistance Branch (Program Manager GS–340–14) subject to satisfactory completion of a one year probationary period from August 13, 1972. On July 19, 1973, plaintiff received notice that he was to be dismissed on August 3, 1973, because of failure to have performed satisfactorily during his probationary period.

Thereafter, on July 20, 1973, plaintiff submitted to his Regional Equal Employment Opportunity counselor a letter in which he claimed that his discharge was due to racial discrimination. The record further shows that the equal employment Opportunity counselor instituted a complete and thorough investigation, conducting in the course thereof several oral interviews, resulting in written statements duly sworn to by the respective writers.[1]

On August 3, 1973, the counselor notified plaintiff that her investigation revealed that the dismissal was not based on racial discrimination, but was a result of poor work performance. On the same date plaintiff filed a formal complaint of discrimination. A further investigation of the claim took place and on December 28, 1973, plaintiff was notified that the discharge was not the result of racial discrimination.

1. See record, exhibits 1 to 24.

On January 8, 1974, by a letter from his attorney, plaintiff requested a Civil Service Commission hearing, after which, by letter dated January 14, 1974, the request was withdrawn. By certified mail, dated February 27, 1974, plaintiff was notified by the Deputy Regional Administrator of the final determination that there was no racial motivation involved and again advising plaintiff of his right to appeal to the Civil Service Commission's Board of Appeals and Review, within 15 calendar days, or to appeal to the Federal District Court within 30 days. On March 12, 1974, plaintiff instituted this action.

By the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(c), Congress waived the United States Government defense of sovereign immunity by authorizing the filing of civil actions by federal employees aggrieved by personnel actions against them. Primary responsibility for enforcement of the Act's provisions lies with the agencies involved and the Civil Service Commission (42 U.S.C. § 2000e–16(b)). Pursuant to the statute, actions may be brought in Federal District Courts only "after either a final order by his [the aggrieved federal employee's] agency, or a decision or order in any personnel action in which the issue of discrimination on the basis of race, color, religion, sex or national origin has been raised by the aggrieved person."

There is a difference of opinion between the parties with respect to the scope of review of the United States District Court. Defendant contends that the District Court is limited to a review of the administrative record, whereas the plaintiff contends that there is a right to a trial *de novo*.

■ Reference to the Congressional Record indicates that Congress intended in the 1972 Amendment to afford the judicial review accorded to previously reviewable personnel decisions. "Finally, written expressly into the law is a provision enabling an aggrieved Federal employee to file an action in the District Court for a review of the administrative proceeding record after a final order by his agency or by the Civil Service Commission if he is dissatisfied with that decision." [92d Cong., 2nd Sess., Congressional Record, S.2280 (February 22, 1972) (remarks of Senator Williams)]. Accordingly, there is now ample authority to establish that the judicial review provided for in the 1972 Amendment is limited to a review of the record of the administrative proceeding. Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973); Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973).

In the recent case, Spencer v. Schlesinger, 374 F.Supp. 840 (D.D.C. filed April 23, 1974) the court stated:

"There is conflict in reported cases but the Court is persuaded that it was the clear intent of Congress to accord federal employees, alleging discrimination, evidentiary hearings at the agency level, and thereafter to afford a review of the administrative record in a district court after exhaustion of all available administrative remedies." (citations omitted)

It is significant that the California court which held in Thompson v. Dept. of Justice, 360 F.Supp. 255 (N.D.Cal. 1973) that a plaintiff was entitled to a trial *de novo* on a charge of racial discrimination, reversed itself on reconsideration, relying upon Hackley v. Johnson, *supra;* Handy v. Gayler, *supra,* and Williams v. Mumford, 6 EPD ¶ 8785. The court, after finding that the plaintiff had voluntarily waived the right to an administrative hearing, made this significant statement:

"This Court would be improperly tampering with the administrative process if it were to fashion a rule entitling an aggrieved person to a hearing *de novo* in district court whenever he knowingly and voluntarily waived an administrative hearing . . . ." Thompson v. United States Dept. of Justice, 372 F.Supp. 762 (N.D.Cal.).

Plaintiff, in his brief in opposition to the defendant's motion, quoted extensively from Hackley v. Johnson, *supra,* about the concerns of Congress, but

omitted to include the portions which deal specifically with the question whether Congress intended to provide a right to trial *de novo* to federal employees. On page 1251 of 360 F.Supp., the court states:

"There was much and often confusing debate as to how these difficulties should be remedied. On the issue of federal employees, as on most other issues, the final version of the Act that passed the Congress was a compromise. For federal employees, proposals putting enforcement in the hands of the Equal Employment Opportunity Commission were dropped in favor of continued jurisdiction by the Civil Service Commission, with a right to file 'a civil action' in the Federal Courts. Accepting its assertion of good faith, Congress was willing to continue to rely on the Civil Service Commission and gave it added authority. At the same time, Congress enhanced the rights of federal employees in fundamental ways. First, the Commission's enforcement machinery was to be strengthened to make it fair and effective so that investigations and resolutions of complaints would be complete and impartial. Congress directed the Commission to expand its expertise on discrimination and imposed various implementing requirements. Systemic discrimination was to be attacked by re-examination of the entire testing and qualification program. A broad range of remedies could be invoked and agencies were to develop affirmative plans of action and continually report their progress to the Commission. The Commission has lived up to these obligations by putting into effect comprehensive new regulations to meet the concerns of Congress. Clear-cut complaint procedures protect individuals as well as groups and broad classes of complainants, and new obligations are imposed on the agencies. 5 C.F.R. Part 713 (1973)."

The court continued:

"The second congressional thrust was the provision of the Act in question here, which guaranteed federal employees a right of access to Federal Courts. 42 U.S.C. 2000e–16(c). On its face, the statute is silent as to the court's duty. To be sure, some legislative history refers to federal employees having the 'full rights available in the courts as are granted to individuals in the private sector under Title VII.' Phrases such as this must be put in their proper context. Congress clearly left primary responsibility for enforcement of these rights within the Civil Service Commission. A fair reading of the statute shows that the courts and the Commission are to work together and complement one another's weaknesses and strengths. Neither can ignore the role the other plays. Viewing the Act and its history broadly, Congress intended to guarantee access to the courts—'a civil action'—to eliminate previous barriers *but not to start the process anew.*" (Emphasis added)

The court also stated at page 1252:

"Congress wanted prompt and consistent decisions in these discrimination matters. A trial *de novo* does not accomplish this but rather works in the opposite direction for a wholly new record must be made and opportunity for reasonable discovery provided. Moreover, it is difficult, as the present cases illustrate, to differentiate between pure discrimination claims and the underlying intricacies of civil service regulations governing job qualification selection for promotion, training and the like. The Commission's growing expertise in civil rights matters, coupled with its preeminent expertise in these latter areas, emphasizes that an automatic trial *de novo* will not serve the laudable purpose of the Act."

■ It is conceded of course that if the federal agency involved has not made a final decision within 180 days,

resort to the District Court would require a trial on the merits since there would be no administrative record to review.

This court has previously held in Ettinger v. Johnson, Civil Action No. 73–702, opinion filed August 20, 1974, that the Equal Employment Opportunity Act of 1972 does not grant the right to a full trial *de novo* to federal employees. The position of this court on the issue has been reinforced by the excellent and scholarly opinion of Judge Gasch, Pointer v. Sampson, 62 F.R.D. 689 (U.S.D.C., 1974).

The recent case, Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), relied on by plaintiff is not in point. In that case, a private employer and not a governmental agency was involved. The issue involved was whether the plaintiff was entitled to a trial *de novo* in the Federal District Court with respect to a private employer. The portions of the Civil Rights Act referred to by the court were those relating to the precise issue involved. General language relied upon by the plaintiff taken out of context, must be interpreted in the light of the precise problem before the court. Consequently, there is nothing in this case to. indicate what the decision would be, had a governmental agency been involved. Accordingly, this court does not agree with the court in Correathers v. Alexander, 7 EPD ¶ 9379 (D.Colo.) filed April 24, 1974, which relied upon the Alexander case, in finding that there was a right to a trial *de novo*.

■ Contemporary case law also establishes that a plaintiff, by deciding not to have an administrative hearing, does not thereby require the court to allow a hearing *de novo*. Thompson v. United States Dept of Justice, 7 EPD ¶ 9209; Bernardi v. Butz, 7 EPD ¶ 9381 (N.D.Cal.1974).

It has been held that the limited review afforded by Congress is the review accorded previously in more limited categories of personnel decisions. Eustace v. Day, 114 U.S.App.D.C. 242, 314 F.2d 247 (1962) and Polcover v. Secty. Treasurer, 155 U.S.App.D.C. 338, 477 F.2d 1223 (1973). Accordingly, Coopersmith v. Johnson, 7 EPD ¶ 9388 (D.D.C.1974); Salone v. United States, 7 EPD ¶ 9376 (W.D.Okla.1974); Chandler v. Johnson, 7 EPD ¶ 9139 (C.D.Cal.1973); Bernardi v. Butz, *supra,* all hold that the scope of court review is limited to a review of the administrative record. As stated in a leading case:

> "The District Court is required by the Act to examine the administrative record with utmost care. If it determines that an absence of discrimination is affirmatively established by the clear weight of the evidence in the record, no new trial is required. If this exacting standard is not met, the Court shall, in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record." Hackley v. Johnson, *supra.,* 360 F.Supp. at page 1252.

■ The administrative record, which in this case is an extensive one, includes a letter under date of July 19, 1973, written to the plaintiff by Daniel J. Snyder, III, Regional Administrator of the agency involved. In this letter, plaintiff was informed that he was to be separated from the Environmental Protection Agency, Philadelphia, at the close of business on August 3, 1973. The work record of the plaintiff was reviewed, and the reasons for the termination were clearly and definitely indicated. The reason assigned for termination was that plaintiff "did not meet the minimum requirements for satisfactory performance in that position or demonstrate the aptitude and potential for assuming the progressively increasing responsibilities required of the Chief of that branch." Plaintiff was also notified of his right to appeal by writing the Philadelphia Regional Office of the U. S. Civil Service Commission, 6th and Arch Streets, Philadelphia, Pennsylvania, within 15 calendar days of the sepa-

ration date if he had reason to believe that the action was based on discrimination because of race, color, religion, sex, national origin, partisan political reasons, marital status or physical handicap. Subsequently, plaintiff executed a formal instrument alleging that his separation from federal service was an act of racial discrimination. A thorough investigation of plaintiff's claim was ultimately followed by formal notice from A. R. Morris, Deputy Regional Administrator, informing Mr. Smith that the opinion of the administrator was that the dismissal of plaintiff was for just cause and was not racially motivated. Plaintiff was informed in this communication that if he was dissatisfied with the proposed disposition he could request a decision by the head of the agency or his designee without a hearing, based upon the evidence present in the complaint filed, and that if he failed to notify the agency of his wishes within the 15 day period the E.E.O. officer may adopt as the agency's final decision the proposed disposition shown and will so notify him in writing. He was informed that he could appeal to the Civil Service Commission's Board of Appeals and Review within 15 calendar days or file a civil action in a Federal District Court within 30 days. He was also informed that a civil action may be filed within 30 days of the receipt of the Commission's decision, or 180 days after an appeal to the Commission if the Commission had not made a final decision within that time.

On January 8, 1974, through his attorney, plaintiff requested a hearing and decision by the agency head or his designee. This was followed by a letter from plaintiff's attorney, dated January 4, 1974, in which the request for a hearing was withdrawn. On February 27, 1974, plaintiff was advised by certified mail from George T. Dukes, Director (EEO officer), Civil Rights and Urban Affairs Division, that the proposed disposition had now become the agency's final disposition on the complaint of racial discrimination. On March 12, 1974, plain-

tiff instituted this action. The administrative record includes 24 exhibits of which 21 are affidavits of various staff members who had been interviewed with respect to the work record of the plaintiff. A careful study of these affidavits indicates that there is some conflict with regard to the facts, which of course could be expected in a situation of this kind. Nevertheless, a careful review of the entire record, including the exhibits in question, requires the conclusion that the administrative action taken was not arbitrary and capricious, but is supported by substantial evidence. Accordingly, the conclusion is that the defendant's motion for summary judgment must be granted.