Riley C. POINTER and Charles H. Bowman, Individually and on behalf of others similarly situated, Plaintiffs,

v.

Arthur F. SAMPSON, Acting Administrator, General Services Administration, and George L. Perryman, Acting Regional Administrator, Region 3, General Services Administration, Defendants.

Civ. A. No. 1557–72.

United States District Court, District of Columbia.

April 18, 1974.

Thomas O. Mann, Washington, D. C., for plaintiffs.

Jay Dugan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This matter is before this Court for consideration of plaintiffs' motion to certify this action as a class action pursuant to the Order of remand from the Court of Appeals dated February 12, 1974.[1]

---

1. By Order of May 14, 1973, this Court upon consideration of defendants' motion to dismiss, granted defendants' motion as to two of the plaintiffs for failure to exhaust their

## I. BACKGROUND.

This action is brought pursuant to Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103. The plaintiffs are black operating engineers employed by the General Services Administration (hereinafter referred to as GSA) in Region 3.[2] It is the contention of plaintiffs that they have been the subject of discriminatory practices on the part of GSA. .Such discrimination has manifested itself, plaintiffs complain, in the form of discriminatory assignment, promotion, and transfer practices as well as discriminatory allocation of inferior tools and work equipment to Negro employees.

Plaintiffs Riley C. Pointer and Charles H. Bowman have, for the purposes of this motion, exhausted their administrative remedies before the agency.[3] Pointer and Bowman now invite the Court to certify this action as a class action wherein the class would encompass "all black operating engineers employed by the General Services Administration who have been, are, or may in the future be affected by the unlawful practices alleged in Paragraph IV of the Complaint." [4]

In ruling on this motion it becomes apparent that two essential questions must be examined before the Court can certify this action as a class action: Does the Equal Employment Opportunity Act of 1972 grant the right to a full trial *de novo* to federal employees under 42 U.S.C. § 2000e–16? Does this action meet, in all respects, the requirements of Rule 23 of the Federal Rules of Civil Procedure thus allowing this Court to certify as a class action? The Court will address the first question at some length since it is a question of significance not only as to the issue of class actions and federal employees under Title VII but also to federal employee remedies in general under the 1972 Amendments.

## II. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED IN 1972.

Subsection 717(a) of Title VII of the Civil Rights Act of 1964 was added by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(a), and provides that "[a]ll personnel actions affecting employees . . . in executive agencies [of the United States] . . . shall be made free from any discrimination based on race, color, reli-

---

administrative remedies. Subsequently, on June 29, 1973, the Court denied plaintiffs' motion to alter or amend this May 14 decision as well as plaintiffs' motion for a certification to the Court of Appeals under Rule 54(b) of the Federal Rules of Civil Procedure. Nevertheless, the Court of Appeals has directed the Court to consider whether this action should be certified as a class action.

2. Region 3 encompasses the entire Washington Metropolitan area. Counsel have represented to the Court that there are 700 operating engineers in this area employed by GSA of which 200 are minority employees.

3. Plaintiff Pointer filed a complaint of discrimination on November 4, 1971, with the Equal Employment Office of GSA alleging denial of promotion on November 11, 1971, because of race. On December 14, 1971, the

complaint was amended. On July 5, 1972, GSA in its final action found no evidence to support plaintiff Pointer's allegation of racial discrimination.

Plaintiff Bowman filed a complaint of discrimination on May 22, 1972, alleging denial of promotion on January 25, 1972, because of race. On June 20, 1972, plaintiff Bowman withdrew his complaint and filed a grievance with the Equal Employment Office of GSA. However, on July 12, 1972, plaintiff Bowman resubmitted his formal complaint and it was sent to the Civil Service Commission (hereinafter referred to as CSC) for formal investigation on August 7, 1972. Plaintiff Bowman, during the course of these proceedings, has been promoted.

4. Plaintiffs' Motion to Certify Action as a Class Action at 1. The practices alleged in Paragraph IV of the Complaint are essentially those outlined above.

gion, sex, or national origin." In implementing this directive, Congress further provided in subsection 717(b) of Title VII, 42 U.S.C. § 2000e–16(b), that the Civil Service Commission was to be the agency to which was given the authority to remedy such discrimination, including reinstatement and back pay, through the promulgation of rules and regulations and the creation of appropriate complaint procedures.[5] Furthermore, the CSC is directed to review and approve agency plans for equal employment opportunity programs [6] and to review and evaluate those programs while periodically obtaining and publishing progress reports.[7] Finally, it is provided that the CSC consult with and solicit the recommendations of interested persons or groups relating to equal employment opportunity.[8]

Under subsection 717(c), 42 U.S.C. § 2000e–16(c), the federal employee who is aggrieved by the final disposition of his complaint or by failure of the agency to take final action, may file a civil action. The suit must be filed in federal court within 30 days after receiving notice of the final action taken by the agency or file an appeal with the CSC. If the agency has not taken final action within 180 days from the date of filing of the discrimination charge, the federal employee is then entitled to file a civil suit.

## III. CLASS ACTIONS UNDER SECTION 717.

The Court has framed the issue of class action certification in the context of the trial *de novo* question because it is clear that if a charge of discrimination by a federal employee is to be considered only on the traditional basis of a review of his administrative record, Polcover v. Secretary of the Treasury, 155 U.S.App.D.C. 338, 477 F.2d 1223 (1973), those employees without an administrative record would lack the essential prerequisite for review in court.[9] Plaintiffs Bowman and Pointer do have administrative records which can be the subject of Court review but consideration of discrimination claims as to other members of the class would require a trial *de novo*. These other prospective members of the class have neither filed a discrimination complaint nor have they attempted to utilize the available administrative remedies in any manner.

Plaintiffs' argument is based on their view of prior law relating to class actions involving employees in the private sector under Title VII. The Court is well aware that the strong weight of authority in suits involving private employees under Title VII does not require that each plaintiff and each member of a putative class file a charge with the Equal Employment Opportunity Commission (hereinafter referred to as the EEOC). It has been held that only one party must so file.[10] However, what plaintiffs fail to recognize is that Congress has enacted an entirely new statutory scheme relating to federal employees and this scheme provides different remedies and different procedures than those Congress embodied in Title VII of the 1964 Civil Rights Act. Thus, although a trial *de novo* [11] and class actions may be appropriate as to employees in the pri-

---

5. The Civil Service Commission has followed this directive through the promulgation of comprehensive regulations found at 5 C.F.R. Part 713 (1973). These regulations will be outlined in detail, *infra*.

6. 42 U.S.C. § 2000e–16(b)(1) (Supp. II, 1972).

7. 42 U.S.C. § 2000e–16(b)(2) (Supp. II, 1972).

8. 42 U.S.C. § 2000e–16(b)(3) (Supp. II, 1972).

9. See note 33, *infra*.

10. *See, e. g.*, Oatis v. Crown Zellerbach, 398 F.2d 496 (5th Cir. 1968); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); *see generally*, Miller, Class Actions and Employment Discrimination Under Title VII of the Civil Rights Act of 1964, 43 Miss.L.J. 275 (1972).

11. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

vate sector, this does not mean that this reasoning must inexorably be applicable to federal employees under this new statutory scheme. This Court agrees with the opinion of Judge Gesell of this Court in Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973), and the Court will not again reiterate the reasoning so ably presented by him respecting the trial *de novo* question. Nevertheless, certain sections of the legislative history bear further exploration by this Court in relating to the question of trials *de novo* and class actions. Admittedly, the legislative history is complicated and ambiguous on certain points but when viewed in the total context of the Act,[12] it is apparent to the Court that Congress did not intend U. S. District Courts to allow federal employees to bypass the administrative procedures set up pursuant to the 1972 Amendments through the process of trials *de novo* in class action discrimination suits. Handy v. Gayler, 364 F. Supp. 676 (D.Md.1973).

A. Legislative History.

Since the statute, as outlined in Part II of this Memorandum, does not explicitly state whether Congress intended U. S. District Courts to review the administrative record or hold trials *de novo*, the courts must look to the legislative history to determine Congressional intent.[13]

Plaintiffs argue, based upon numerous statements in the legislative history, that federal employees were to have the same rights as private employees. It follows therefore, plaintiffs contend, that since private employees had the right to trials *de novo* Congress must have intended that federal employees have the same right to trials *de novo*.

Thus, class actions are appropriate, it is urged, since review is not limited to the administrative record.

The first such statement equating public employee rights with those of the private employee is found in the Senate Report No. 92–415, 92nd Cong. 1st Sess. (1971), at 16 (hereinafter referred to as Senate Report):

> The provisions adopted by the committee will enable the [Civil Service] Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. Aggrieved employees or applicants will also have the *full rights available in the courts as are granted to individuals in the private sector* under Title VII.[14] (Emphasis added.)

This theme again is enunciated by Senator Williams, Chairman of the Senate Committee on Labor and Public Welfare and floor manager of the Committee Bill:[15]

> Finally, written expressly into the law is a provision enabling an aggrieved Federal employee to file an action in the U. S. District Court *for a review of the administrative proceeding record* after a final order by his agency or by the Civil Service Commission, if he is dissatisfied with that decision. Previously, there have been unrealistically high barriers which prevented or discouraged a Federal employee from taking a case to court. This will no longer be the case. There is no reason why a Federal employee should not have the *same right of action enjoyed by individuals in the private*

---

12. 2A, Sutherland, Statutes and Statutory Construction, § 46.05 at 56 (4th ed. 1973) (hereinafter referred to as Sutherland).

13. References to the legislative history will be cites to the Senate Committee on Labor and Public Welfare Compilation, Legislative History of the Equal Employment Act of 1972, 92d Cong., 2d Sess. (1972) (hereinafter cited as History).

14. History at 425.

15. Statements of members of the committee in charge of the bill during its consideration on the floor of the legislature are considered by the courts in their construction of the provisions of the bill subsequently enacted into law. 2A Sutherland at § 48.14.

*sector*, I believe that the Committee has acted wisely in this regard.[16]

(Emphasis added.)

If one did not look further into the context of Senator Williams' remarks and the statements in the Senate Report, one might think there was an irreconcilable inconsistency between the statement that federal employees should have the same rights as private employees but still must be limited to review of the administrative record. Clearly, private employees had more than the mere right to have their EEOC record reviewed by courts. This apparent inconsistency is explained by the fact these remarks were addressed to the rights of private employees *as proposed in the parallel reformation* of EEOC procedures in the 1972 Act.

As originally contemplated in the Williams and Committee bills, Title VII enforcement responsibilities for private employees were lodged with the EEOC which was to issue cease and desist orders and direct reinstatement or hiring.[17] Review of EEOC final determinations were subject to review by the United States Courts of Appeals under the substantial evidence test, *i. e.*, limited review. Thus, when statements were made concerning the giving to federal employees the same rights as private employees, it is evident that what was meant was a court review of the record whether it be by the Courts of Appeals

as to private employees or by the District Courts vis-a-vis federal employees.

If the statements of Senator Williams are taken in this context, any apparent inconsistency between review of the record and equality of rights disappears.

Additionally, Congressional intent can be discerned through certain amendments that were finally enacted into law. Initially, the EEOC was to have jurisdiction over federal employee discrimination complaints. However, during the first day of debate the Senate rejected this proposal and adopted the amendment, subsequently enacted into law, leaving federal employees under the jurisdiction of the Civil Service Commission.[18] It appears, therefore, that Congress was expressing a belief that the Civil Service Commission whose actions were now subject to judicial scrutiny,[19] could promulgate regulations that would fairly and impartially remedy discrimination within the federal sector. The Civil Service Commission now provides that the hearing examiner must, except in certain unusual circumstances, be an employee from another agency.[20] Secondly, CSC regulations require the examiner to review the complaint to discern whether the necessary investigation has been conducted.[21] If an adequate investigation has not been provided, the examiner may remand the complaint for further investigation.[22] The rules of evidence at the hearing are not to be strictly applied.[23] Further

---

16. 118 Cong.Rec.S. 2280 (daily ed. February 22, 1972) ; History at 1727.

17. The Williams Bill was S. 2515, 92d Cong., 1st Sess. (1971). The bill that emerged from the Committee on Labor and Public Welfare left this cease and desist authority intact.

18. 116 Cong.Rec. 34404–10 (1970). This amendment was adopted by a roll-call vote of 37–29. *See* Sape and Hart, Title VII Reconsidered: The Employment Opportunity Act of 1972, 40 G.W.L.Rev. 824, 834–835 n. 60.

19. Although Civil Service Commission findings were subject to some review, Chambers

v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971), Allison v. United States, 451 F. 2d 1035, 196 Ct.Cl. 263 (1971) (there was controversy surrounding the propriety of these decisions), it was clear to Congress that barriers to court review by federal employees were often insurmountable. *See* note 15 *supra* and accompanying text; History at 425 (an aggrieved employee does not have access to the courts).

20. 5 C.F.R. § 713.218(a) (1973).

21. 5 C.F.R. § 713.218(b) (1973).

22. *Id.*

23. 5 C.F.R. § 713.218(c)(2) (1973).

protections are provided to the rights of the employee through the taking of testimony under oath, rights of cross-examination [24] and representation by counsel,[25] and the power of the complaints examiner to compel attendance of agency witnesses.[26] Finally, all testimony must be recorded and transcribed [27] and findings of fact must be prepared.[28]

When viewing the legislative history in the context of the entire Act, it cannot be overlooked that the Civil Service Commission has been given a broad range of authority that was provided for the purpose of remedying discrimination.[29] It is difficult to accept the allegation that Congress provided the Civil Service Commission with such an assemblage of powers for remedying discrimination, intending that such powers lie fallow while the employees request courts to fashion their own uncoordinated remedies without the benefit of agency proceedings. When considering EEOC cease and desist powers and review in the Courts of Appeals, the Senate Report notes that:

> The committee is concerned, however, about the interplay between the newly created enforcement powers of the Commission [EEOC] and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill therefore contains a provision for cutoff of the Commission's jurisdiction once the private action has been filed. . . .

* * * * * *

> It should be noted, however, that it is not the intention of the committee to permit an aggrieved party to retry his case merely because he is dissatisfied with the Commission's action. Once the Commission has issued an order, further proceedings must be in the courts of appeals. . . .

Senate Report at 24; History at 433.

What plaintiffs ask the Court to authorize is just such a duplication of proceedings and retrial. Granting such a request would be contrary to the intent of Congress.

It is difficult for this Court to accept, therefore, plaintiffs' argument that there is no reason to distinguish between private and federal employees with regard to questions of trials *de novo* and class actions. Federal employees are provided with the benefit of procedures outlined above in an adversary context with the administrative body (CSC) having full powers of reinstatement and power to grant back pay. Private employees in actions under Title VII have no such remedies before the EEOC.

Accordingly, it is the conclusion of the Court that the legislative history illustrates a Congressional intent that federal employees wait until final agency action on their complaint, unless agency inaction for 180 days is evident. Inasmuch as a court would in almost every case have a record to review,[30] this

---

24. *Id.*

25. *Id.*

26. 5 C.F.R. § 713.218(e) (1973).

27. 5 C.F.R. § 713.218(f) (1973).

28. 5 C.F.R. § 713.218(g) (1973).

29. See notes 5–8 *supra* and accompanying text.

30. This, of course, assumes the agencies would take final action before the 180-day cutoff point. Agency inaction would allow the federal employee to come into court without a record. In such instances a trial on the employee's charges could be held. It is clear Congress also considered such immediate recourse to the courts would be unusual as reflected in the Senate Report:

> It is expected that recourse to this remedy [immediate resort to the Courts due to agency inaction] will be the exception and not the rule, particularly once the Commission's [at this stage, the EEOC] enforcement procedures are fully operational. In the meantime, however, the committee believes that the aggrieved person should be given an opportunity to escape the administrative process when he feels

would rule out the inclusion of a class of persons who have not participated in the administrative process.

B.   Case Law.

The seminal case in this area is Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973). There have been other opinions in the area holding to the contrary,[31] but this Court believes Judge Gesell's ruling the better reasoned view when he finds that there is no right to a trial *de novo* if the Court

> [D]etermines that an absence of discrimination is affirmatively established by the clear weight of the evidence in the record . . . . If this exacting standard is not met, the Court shall, in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record.

360 F.Supp. at 1252.[32]

Judge Gesell only tangentially discusses class actions in *Hackley*, 360 F.Supp. at 1254 n. 11, but Chief Judge Northrop of the United States District Court for the District of Maryland in Handy v.

Gayler, 364 F.Supp. 676 (1973), has met this question squarely. In that case, the plaintiff was a black personnel officer employed by the National Security Agency (NSA). The suit was filed as a class action on behalf of the plaintiff and all persons adversely affected by unlawful employment practices at NSA. Upon consideration of defendants' motion to dismiss, Chief Judge Northrop found that since a trial *de novo* was not required by the 1972 Act, a class action could not be maintained. The Court, in expressing this view, noted:

> Were this Court to permit the plaintiff to proceed, it would entail in essence a trial *de novo* in order to create a record on the allegation of discrimination against a class.

364 F.Supp. at 679.

As a consequence of Chief Judge Northrop's finding that his review should be limited to a review of the record and no trial *de novo* required, he remanded the case to the Civil Service Commission appeals examiner for further investigation of the charges without allowing plaintiff to proceed with his class action.[33]

---

his claim has not been given adequate attention.
Senate Report at 23–24; History at 432–433.

31. Griffin v. United States Postal Service, Civ.Action No. 72–487 (M.D.Fla., February 7, 1973) ; Henderson v. Defense Contract Administration Services Region, New York, Civ.Action No. 72–H–1003 (S.D.Texas, December 13, 1973).

32. Other cases have followed *Hackley*, holding there is no right to a trial *de novo*. Chandler v. Johnson, 7 [C.C.H.] E.P.D. ¶ 9139 (C.D.Cal.1973) ; Tomlin v. Air Force Medical Center, 369 F.Supp. 353 (S.D.Ohio 1974). Judge Wollenberg, in Thompson v. United States Dept. of Justice, Bureau of Narcotics, 360 F.Supp. 255 (N.D.Cal.1973), originally held there was a right to a trial *de novo*; however, upon reconsideration and with the benefit of the recent decisions in Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973), Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973), and Williams v. Mumford, 6 F.E.P.Cases 483, Judge Wollenberg held there was no right to a trial *de*

*novo*. 7 F.E.P.Cases 347. It is especially pertinent to note that in that case the plaintiff waived his right to an administrative hearing. Addressing this point, Judge Wollenberg stated that

> [T]his Court would be improperly tampering with the Administrative process if it were to fashion a rule entitling an aggrieved person to a hearing *de novo* in district court whenever he knowingly waived an administrative hearing. Such a rule would be the result of a decision here that by not responding to an offer for an administrative hearing, plaintiff has become entitled to a trial *de novo* in this Court.

7 F.E.P.Cases at 348.

33. As noted by Judge Gesell in *Hackley*, 360 F.Supp. at 1254 n. 11, CSC regulations allow investigation of discrimination in the context of a class action if there is evidence of systematic racial discrimination. Thus an administrative record could be developed as to a class question. 5 C.F.R. § 713.251. In dictum, Judge Gesell noted that if he were

■■ It is the decision of the Court, therefore, that it cannot grant the motion to certify this action as a class action in light of this Court's interpretation of the legislative history of the 1972 Act which indicates no right to a trial *de novo* and this Court's agreement with what it views as the better reasoned case law that a class action cannot be maintained if there is not an administrative record for each prospective member of the class.[34]

## IV. THE REQUIREMENTS OF RULE 23.

In view of this Court's ruling that no class action is appropriate in this case due to the circumscription of the 1972 Act, it is not necessary to examine in detail the requirements of Rule 23 in connection with the fact pattern of this case. Nevertheless, the Court feels these plaintiffs do have serious difficulties in meeting the requirements of Rule 23 and these problems should be briefly set forth.

■ The prerequisites to maintenance of a class action are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Plaintiffs in this case have severe problems in meeting the requirement of commonality and typicality as required by 23(a)(2) and 23(a)(3), respectively.

■ As to the issue of common questions of law or fact, the Court is aware that a number of courts have adopted the "across-the-board" test holding that since race discrimination is by definition class discrimination, the common question of fact is the question of discrimination because of race.[35] However, this result is not demanded in every case where the discrimination as to other members of the class is of a different kind involving different essential facts than those applicable to the plaintiffs.[36] In this case it is doubtful that plaintiff Pointer in fact even applied for the position for which he now alleges he was turned down due to discrimination and plaintiff Bowman has been promoted to the position he sought.

The question of typicality under (a)(3) is inextricably intertwined with commonality and it is also doubtful whether these two plaintiffs meet the typicality requirement. Williams v. Mumford, 6 F.E.P.Cases 483 (D.D.C. August 17, 1973).[37]

to reach the question of class actions in *Hackley,* "it is probable the matter could not now proceed as a class because of failure to exhaust administrative remedies." 360 F. Supp. at 1254 n. 11.

34. Again, it must be noted this reasoning is inapplicable where *agency inaction* is the force that initiates the employees' journey to court.

35. *See, e. g.,* Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir.

1969); Hall v. Werthan Bag Corp., 251 F. Supp. 184 (M.D.Tenn.1966). *See* Miller, Class Actions and Employment Discrimination under Title VII of the Civil Rights Act of 1964, 43 Miss.L.J. 275, 281 (1972).

36. Hyatt v. United Aircraft Corp., Sikorsky Aircraft Div., 50 F.R.D. 242, 246–247 (D. Conn.1970).

37. *Contra,* Richerson v. Fargo, 61 F.R.D. 641 (E.D.Pa., 1974).