Norman R. McLAUGHLIN, Individually
and on behalf of all others similarly
situated, Plaintiffs,

v.

Howard H. CALLAWAY, Individually
and in his capacity as Secretary of
the Army, et al., Defendants.

Civ. A. No. 74–123–P.

United States District Court,
S. D. Alabama, S. D.

Sept. 30, 1974.

J. U. Blacksher, Mobile, Ala., Jack Greenberg and Morris J. Baller, New York City, Caryl P. Privett, Birming-

ham, Ala., Joseph P. Hudson, Lawyer & Hudson, Gulfport, Miss., for plaintiffs.

Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for defendants.

## ORDER

PITTMAN, Chief Judge.

This case presents important questions concerning the effect of the 1972 Amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff is an employee of the General Services Administration, doing custodial work in the offices of the Corps of Engineers in Mobile, Alabama. He alleges he was denied employment by the Corps of Engineers because of his race, Negro. He brings suit pursuant to 42 U.S.C. § 2000e–16, 42 U.S.C. § 1981, 28 U.S.C. § 1361, 28 U.S.C. § 1346(a)(2), and the Fifth Amendment to the Constitution. Plaintiff contends that the Mobile District of the Corps has practiced, and continues to practice, a discriminatory employment and promotional policy to the detriment of blacks and Latin Americans. (A detailed exposition of the alleged practices is found in paragraph V of the complaint.) This discriminatory policy is alleged to be violative of 42 U.S.C. §§ 1981, 2000e–16; Executive Order 11478; and the United states Constitution.

Plaintiff, a Negro of Latin American descent, seeks to maintain this suit as a class action. He asks the court to certify the class as all past, present and future minority (Negro and Latin American descent) employees of the Corps, and all minority persons who have applied, or may apply, for employment with the Corps. Relief sought includes preliminary and permanent injunctions restraining discriminatory practices; a declaratory judgment that the past policies of the Mobile District are violative of the rights of the class; back pay and reinstatement, as appropriate; attorneys' fees; employment of McLaughlin in the highest position to which he is entitled; and retention of jurisdiction to ensure continued compliance with the court's order.

Subsequent to the filing of this action, Milton Jones, Jr., filed for leave of court to intervene as a party plaintiff. Jones avers that he is a member of the class which plaintiff seeks to represent, in that he is a Negro employee of the Mobile District of the Corps of Engineers. His main contention, aside from his adoption of the plaintiff's complaint, is that he was denied a promotion because of his race.

The defendants are the Secretaries of the Army and Defense, and the District and Division Engineers in charge of the Mobile District. They are sued individually and in their representative capacities. In response to the complaint and the motion to intervene, the defendants have filed a motion to dismiss, or alternatively, for summary judgment, and an objection to the proposed intervention. The main thrust of these motions is that plaintiff is required to exhaust administrative remedies before filing suit, and, if the plaintiff has exhausted, he is entitled to a review of the administrative record as opposed to a trial *de novo*. Defendants have filed the complete administrative record which was compiled during agency action on McLaughlin's complaint.

As will be developed more fully, the court finds that administrative remedies have been exhausted. This leaves as the critical initial determination whether plaintiff is entitled to full trial in this court, possibly maintained as a class action, or whether some procedure short of a *de novo* hearing is sufficient. Much has been written on the question of the effect of the 1972 Amendment to Title VII as it relates to federal employees, specifically 42 U.S.C. § 2000e–16. Until the Act was amended by Congress, Title VII applied only to employees in the private sector of the economy. Although the amendment clearly extends coverage to employees of the federal government and grants these persons the right to "file a civil action" in the District Courts, there has been disagreement be-

tween various courts concerning the scope of this civil action. The precise question has yet to be decided by any of the Courts of Appeals, however numerous District Courts have considered this issue. The parties have presented several of these decisions in their briefs and the court has discovered a few other recent cases. After a consideration of these cases and the legislative history of the 1972 Amendment, this court has concluded that a trial *de novo* is not automatically required by the statute.

## I.

The court has observed that much has been written on the scope and meaning of § 2000e–16, and we do not intend to discuss in great detail points which have received adequate discussion elsewhere. Instead, the court will attempt to emphasize those points which it deems to be most persuasive. In Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973), Judge Gessell analyzed in detail the legislative history of the 1972 Amendment. The Hackley decision points out, as virtually all the reported cases do, that the legislative history is sketchy and inconclusive. Although the statute grants the District Courts jurisdiction over these cases, it does not explain how it is to be exercised.[1] The *Hackley* court briefly summarizes the evolution of court review of federal employment standards, emphasizing that resolution of controversy has traditionally been based on the administrative record. *Id.* at 1250. This historical method of dealing with disputes involving employment of federal personnel, coupled with the lack of a clear directive in the statute, leads the *Hackley* court to look to the legislative history to determine the proper exercise of this new grant of federal jurisdiction.

It appears two major problems were uppermost in the consideration of the Congress when enacting the amendment to Title VII: (1) the ineffectiveness of the Civil Service Commission (CSC) in dealing with employee grievances, and (2) the almost insuperable barriers to court review of agency action in this area. *Hackley, supra* at 1251, n. 4. Before a final bill was passed, several proposals were offered to remedy these shortcomings in the existing system. See Pointer v. Sampson, 62 F.R.D. 689 (D.D.C.1974) (Gasch, J.). There were proposals suggesting the Equal Employment Opportunity Commission (EEOC) be given authority over federal employees, however, the final draft of the law opted for strengthening of the CSC. The CSC was given extensive powers to enforce the commands of Title VII, including the power to grant back pay and reinstatement. Congress also gave the CSC the duty of establishing and monitoring affirmative action plans designed to eradicate discrimination. The CSC was also ordered to establish a procedure whereby an employee could obtain fair and speedy resolution of his grievances. 42 U.S.C. § 2000e–16(b). The CSC has promulgated an extensive set of regulations for processing employee complaints, 5 C.F.R. Part 713 (1973), which were recently extolled by this Circuit as "particularly well calculated to ensure ready reception and prompt, fair disposition of discrimination claims." Penn v. Schlesinger, 497 F.2d 970 (5th Cir. 1974) (en banc), decision reported at 490 F.2d 700, 707–714. This strengthening of the CSC and adoption of definite procedures was designed to eliminate the administrative difficulties formerly faced by federal employees when challenging discriminatory practices.

Despite this well-defined and conceived administrative set-up, which provides for the compilation of a complete record of all proceedings, plaintiff argues that a *de novo* trial is required, citing various statements in the legislative history. Certain legislative com-

---

1. Where this failure to set out how jurisdiction is to be exercised leads Judge Gessell to a search of the legislative history for elucidation, at least one court has found that the grant of jurisdiction, without any restricting language, authorizes full blown proceedings. Reynolds v. Wise, 375 F.Supp. 145 (N.D. Tex.1974).

ments cited by plaintiff, equating the rights of public employees with the rights of private employees, would seem to imply that *de novo* trials are envisioned, since *de novo* trials are provided in private employee actions. However, these statements were addressed to the original Senate Bill, S. 2515, 92d Cong., 1st Sess. (1971), which would have amended the rights of private employees and the procedures of the EEOC. The bill reported to the floor of the Senate when an amendment was being considered would have given the EEOC enforcement powers in private sector disputes, with review in the Circuit Courts under the substantial evidence test. This explains why there are statements by various Senators discussing the federal employees' right to a review of the administrative record, and also statements equating the rights of public and private employees. Pointer, supra, 62 F.R.D. at 692–694; Hackley, supra, 360 F.Supp. at 1251. As originally contemplated in the Senate, private and public employees would have the same access to the courts: review of the administrative record by the Courts of Appeals in the private sector, and by the District Courts in the public sector.

Another passage in the Senate Report further explains the seeming paradox presented by the conflicting statements. The Committee Report analyzing the original set-up, which would have granted the EEOC enforcement powers, stated:

> [I]t is not the intention of the committee to permit an aggrieved party to retry his case merely because he is dissatisfied with the Commission's action. Once the Commission has issued an order, further proceedings must be in the *courts of appeals*. . . .

> S.Rep. No. 92–415, 92d Cong., 1st Session 24 (1971)

The comments of the various Senators on which plaintiff relies were directed to the original Senate bill, and read in that context, the seeming discrepancies are accounted for. (See Judge Gasch's excellent discussion on this point in *Pointer, supra*, 62 F.R.D. at 692–694.)

As finally passed, the 1972 Amendment creates a new system to deal with discrimination in federal employment which is very different from the system established in 1964 to deal with the private sector. Congress ordered the CSC to provide a procedure to deal swiftly and fairly with employee complaints in the federal sector. The result is found in 5 C.F.R. Part 713, which defines in great detail the steps an employee follows to obtain consideration of his complaint. There are provisions for the maintenance of a class action in the administrative process, as well as procedures for the individual complainant. 5 C.F.R. § 713.251. These procedures are well summarized in the Fifth Circuit's opinion in Penn v. Schlesinger, 490 F.2d at 711–712, and this court will not indulge in a recapitulation. A consideration of the regulations points out the differences between the private and public sector, which enforces this court's belief that federal employees do not receive a *de novo* hearing as a matter of course. In Abrams v. Johnson, 383 F. Supp. 450 (N.D.Ohio 1974), the court notes that EEOC findings and conclusions are non-adjudicative, with conciliation being the purported aim of the agency. The EEOC has no power to enforce the policies of Title VII. Nothing said or done in pursuance of conciliation by informal endeavor is admissible at a later trial without the consent of the parties. 42 U.S.C. § 2000e–5(b). By contrast, the regulations call for the development of a full record of proceedings within the agency and the CSC, including a transcript of hearings. 5 C. F.R. § 713.218. The agencies are urged to correct their own policies and, failing that, the CSC has full powers of enforcement. Whereas the whole thrust of proceedings before the EEOC is conciliatory and aimed toward voluntary compliance, the regulations provide for an adjudicative type resolution of employee complaints in the public sector.

■ An analysis of the 1972 Amendment to the Act, the legislative history and the administrative regulations enacted subsequently, leads the court to conclude that the scope of the civil action provided in § 2000e–16(c) will depend on the facts of each case. The main responsibility for enforcing the policies of Title VII in the public sector is clearly placed in the CSC, with its broad powers of enforcement. However, Congress desired to eliminate the roadblocks to court consideration of employee grievances. A system was conceived that placed full powers to enforce Title VII within the administrative process. To eliminate past agency insensitivity and ensure a judicial recourse, the statute grants access to the courts. Realistically, the statute envisions the CSC and the District Courts working together to complement each other, with the court maintaining a watchful eye on the administrative process to insure its impartiality and fairness. Viewing the whole system, this court concludes it would be pointless to provide for so full a development of an agency record and then relitigate the entire case in the District Court. Furthermore, such a procedure would flout Congressional intent and ignore the historical method of dealing with complaints by federal employees.

The fact that a trial *de novo* is not required in all cases does not complete this discussion. Although the scope of court review must be determined on an *ad hoc* basis, the court is in agreement with the conclusion in *Hackley, supra*, 360 F. Supp. at 1252:

> The District Court is required by the Act to examine the administrative record with utmost care. If it determines that an absence of discrimination is affirmatively established by the clear weight of the evidence in the record, no new trial is required. If this exacting standard is not met, the Court shall, in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record.

This standard will be applied to this case when the court considers the merits of McLaughlin's claims. Application of this standard will eliminate the necessity of trial *de novo* in many cases and will most effectively carry out the intent of the Congress.[2]

■ In the recent decision of Penn v. Schlesinger, *supra*, the Fifth Circuit made clear that use of the procedure in the regulations enacted pursuant to § 2000e–16 was necessary before a court suit would be entertained. Other courts have stated the same principle: exhaustion of administrative remedies is required before a civil action under the 1972 Amendment could be maintained. Spencer v. Schlesinger, 374 F.Supp. 840 (D.D.C.1974); *Hackley, supra*. Section 2000e–16(c) provides that a civil action may be instituted: (1) thirty days after notification of final CSC or agency action, or (2) 180 days after filing of the complaint (or appeal with the CSC) if there has been a failure to take final action. The courts deciding the question have uniformly held that, despite the strong policy of exhaustion, Congress clearly intended speedy resolution of claims under § 2000e–16. Failure to take final action within 180 days gives the employee the right to file a civil action and to have *de novo* consideration of his claim, since there would be no record. *Hackley, supra; Pointer, supra; Spencer, supra.*

In the case at bar, after failure to resolve the complaint informally, a formal complaint was filed January 29, 1973. Following investigation as mandated by

2. Finally, in this regard, the court notes the case of Johnson v. United States Postal Service, 364 F.Supp. 37 (N.D.Fla.1973), a suit brought pursuant to § 2000e–16(c). Relying on Hackley v. Johnson, *supra*, Judge Middlebrooks held that a trial *de novo* was not required in the case because a complete administrative record had been filed with the court, upon which a decision could be based. The case was affirmed on appeal, without discussion of the *de novo* issue. 497 F.2d 128 (5th Cir. 1974).

the regulations, the proposed findings and disposition of the District Office of the Corps was mailed to plaintiff April 23, 1973. On April 27, plaintiff requested a hearing by an impartial examiner, see 5 C.F.R. § 713.217, which was held on May 22. Pursuant to 5 C.F.R. § 713.218, the hearing examiner forwarded his analysis, findings and recommended decision to U. S. Army Headquarters on July 11, 1973. On July 29, 1973, the 180 day period from filing of the complaint ended; on March 28, 1974, suit was filed in this court; and on May 13, 1974 (over 460 days from original filing), final action was taken by the Army. The administrative record of these proceedings was not filed until August 2, 1974. The court has determined under the facts of this case that this chronology of events does not of itself require a *de novo* hearing. These factors were considered in the determination of the propriety of trial *de novo*, discussed *infra*.

## II.

Before reaching the merits of this claim, several points remain which must be considered. Plaintiff has asked the court to certify his suit as a class action attack on the policies of the Corps of Engineers. McLaughlin is the only person before the court who has prosecuted his claims through the administrative process. The allegations of his administrative complaint relate to discrimination practiced upon him as an individual in his quest for a position as Computer Technician. See Appendix A, Plaintiff's complaint. Although some testimony was offered at the administrative hearing concerning a general policy of racial discrimination by the Corps, this evidence was admitted for the probative value it might have in deciding plaintiff's claim. Administrative Record, Hearing Transcript pp. 4–5. The regulations enacted pursuant to § 2000e–16 contemplate, and provide procedures for,

the maintenance of a class action in the administrative process. 5 C.F.R. § 713.-251. There has been no attempt to pursue these procedures by the plaintiff or any other members or representatives of the class. The Fifth Circuit has recently expressed, in clear and definite terms, the necessity of exhausting administrative remedies under the 1972 Amendment to Title VII before bringing an action in court. Penn v. Schlesinger, *supra*. Other courts have also held that class action type claims must be asserted in agency proceedings before they can be considered by the District Court. Handy v. Gayler, 364 F.Supp. 676 (D. Md.1973); Hackley v. Johnson, *supra*. In line with the purposes of the Act, effectuated by the doctrine of exhaustion, the agency must be allowed an opportunity to correct its own mistakes before a court is called on to act.

A necessary corollary to the failure to exhaust administrative remedies is the fact that no administrative record has been developed on the alleged class-wide discrimination. Previously discussed was the proposition that Congress intended the agencies and the CSC to effectuate the policies of Title VII. The courts will generally sit in review of the decision reached by the agency. Without the development of a record, the court would be forced to hold a trial *de novo* and the aim of Congress would be subverted. Since there is nothing to review, and since the class action claims have not been exhausted, the court will not certify this suit as a class action. Williams v. Mumford, 6 EPD § 8785 (D.D.C.1973).[3]

Milton Jones, Jr. filed a motion for leave to intervene in this suit, alleging the same class-wide discrimination, and alleging personal discrimination in his attempt to be promoted to Architect, GS–12. This motion will be denied for two reasons. First, by affidavit filed July 12, 1974, the Executive Assistant

---

3. For a contrary view which this court regards as unsound, see Richerson v. Fargo, 61 F.R.D. 641 (E.D.Pa.1974), which holds that a class action may be maintained if one class member has exhausted his administrative remedies.

of the CSC certified that the appeal of Milton Jones, Jr. is currently before the Board of Appeals and Review. Jones' complaint alleges he received notice of final agency action on April 4, 1974. At this point he had the option of filing an appeal with the CSC or initiating an action in the District Court. It would appear he has attempted to do both. In view of the strong emphasis toward administrative resolution of these claims, the court must give way to the administrative process and allow the CSC to complete its investigation. After final action by the CSC, or after 180 days from filing of appeal with the CSC, Jones will have the option of filing a civil action in the District Court. § 2000e–16(c).

■ The second reason for denying intervention is that the individual claims of Jones are not related to those of McLaughlin. The resolution by this court of McLaughlin's complaint will not affect the right of Jones should he subsequently choose to pursue a court action. Since the case is not going forward as a class action, only the rights of the individual plaintiff will be decided herein. Although both complaints allege discrimination by the Corps on the basis of race, McLaughlin is a disappointed applicant for a non-professional wage-grade position. Jones is a present employee of the Corps who holds a professional position and complains of his failure to obtain a promotion. These differences are sufficient to defeat joinder. For the reasons set out, the motion to intervene will be denied.

Besides Title VII, plaintiff has asserted several other statutory grounds for relief, including 42 U.S.C. § 1981; 28 U.S.C. §§ 1346(a)(2), 1361; and the Fifth Amendment. Obviously, if *de novo* trial is required on any of these grounds, the preceding discussion has been academic. It is, however, this court's view that none of these other grounds require a full trial in the instant case.

■■ The plaintiff's claim to an independent cause of action under § 1981 is rejected. The doctrine of sovereign immunity continues to insulate the government from suit absent a waiver of the protection. The waiver of immunity must be specific and it cannot be implied by construction of a statute that is ambiguous. In considering whether § 1981 expresses the desire of the Congress to give up the government's protection, the Fifth Circuit recently stated: "Section 1981 contains no explicit waiver of sovereign immunity by the federal government but merely a general prohibition of discrimination on racial grounds." Petterway v. V. A. Hosp., Houston, Tex., 495 F.2d 1223, 1225 n. 3 (5th Cir. 1974).

■ Plaintiff is correct that the Tucker Act, 28 U.S.C. § 1346(a)(2), has been held sufficient to provide jurisdiction in the Court of Claims to entertain suits for back pay by disappointed applicants or employees of the government. Pettit v. United States, 488 F.2d 1026 (Ct.Cl.1973). The rationale behind such decisions was that specific rights against discrimination had been granted by Executive Orders and administrative regulations. Absent a clear prohibition of access to the courts to protect those rights, "we think it is the intent of Congress that the general jurisdictional statutes are controlling." Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971). Now, the Congress has specifically created a statute dealing with federal discrimination, providing extensive procedures and clearly establishing certain remedies, including back pay. The general provisions of the Tucker Act are no longer necessary as a jurisdictional basis to this action for back pay. Furthermore, in view of the fact that § 2000e–16 places primary enforcement powers in the agency and CSC, with court action limited to review in most cases, allowing the plaintiff to proceed *de novo* under § 1346(a)(2) would defeat the purpose and intent of the 1972 Amendment. The court concludes that § 1346(a)(2) is no longer necessary

as a basis of jurisdiction in cases covered by Title VII and no trial *de novo* is required because of the decisions in *Chambers* and *Pettit*.

Finally, plaintiff relies on 28 U.S.C. § 1361 as an independent basis for jurisdiction. This statute grants to the District Courts the authority to hear actions to compel public officials to perform their ministerial duties. Plaintiff alleges that the defendants have failed to follow their obligation not to discriminate and this court should order them to refrain from discrimination. Mandamus is an extraordinary remedy which is normally only utilized when no other adequate remedy is available. Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969). In the instant case, an adequate remedy is available under Title VII. Plaintiff, however, cites *Petterway, supra,* which suggests mandamus would be appropriate in a suit of this type. This court finds nothing in that decision which compels us to hold a trial *de novo* in this case, contravening the intent of the Congress. Since the relief which plaintiff seeks is available pursuant to § 2000e–16, this court will not allow plaintiff to circumvent the intended review of agency action by use of the administrative record. No trial *de novo* is required by the mandamus statute.[4]

### III.

Having traversed the procedural pathways involved in this litigation, the court may now consider the merits of McLaughlin's claim. The court has previously set out a brief summary of the administrative action taken in McLaughlin's case. The complaint filed with the Equal Employment Opportunity

Officer of the Mobile District alleges that McLaughlin applied for the position of Computer Technician, GS-4, via a phone call to Mrs. Rose McKaig in the Personnel Office of the Corps. The complaint claims that plaintiff appeared at the Personnel Office on October 18, 1972, and presented a Civil Service Certificate of Eligibility for that position, but the Personnel Office had no record of the receipt of such a document and plaintiff did not produce a duplicate at any time during the agency proceedings. Subsequently, plaintiff made a telephone inquiry about his application and was informed that he had applied for the position of Accountant, GS-7, and had not been selected. McLaughlin alleges he was later informed that the area of consideration for the Technician job was limited to current employees of the Mobile District, although he was not so informed at the time of application. He contends this area of consideration is *per se* discriminatory because of the small percentage of blacks and other minorities employed within the District. As relief McLaughlin sought a comparable position to that for which he thought he had applied, and an end to the discrimination against him.

Initially, the complaint was processed by a local official who found there had been a misunderstanding as to the position for which plaintiff applied. The position for which plaintiff says he applied was limited to current employees of the District, and plaintiff failed to qualify. The local officer found that this restriction of applicants was consistent with regulations of the agency, since there were five highly qualified individuals within the District occupying positions which were the normal source

---

4. Plaintiff also contends that a cause of action exists under the Fifth Amendment. Although courts have on occasion held that the various amendments to the Constitution do create independent bases of jurisdiction, Bivens v. Six Unknown Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), these decisions involve instances where there is no adequate pre-existing remedy. In the case under discussion, the plaintiff can fully adjudicate his Fifth Amendment claims in the Title VII action. No necessity for trial *de novo* exists upon this basis either. See the discussion, *supra,* concerning Tucker Act jurisdiction, 28 U.S.C. § 1346(a)(2).

of new Computer Technicians.[5] This was found to be a non-discriminatory policy and, therefore, plaintiff was entitled to no relief since he would not have qualified for the position, because of the limitation, even if his application had been considered.

The report of the local officer was sent to the Civilian Appellate Review Office in Atlanta, which dispatched one of its officers to conduct an investigation. His report concluded that there had been a misunderstanding as to the position applied for.[6] The report of the local officer was criticized for relying on the area of consideration limitation when such an egregious imbalance in minority employment existed in the Mobile District. This report states that the limitation of the applicants to Mobile District employees should undergo close scrutiny in future hiring decisions. However, the Appellate Review Officer found no discrimination took place in McLaughlin's failure to secure the Technician position, because he was not considered for the position.

Plaintiff was notified of the District's decision to accept this appellate report. McLaughlin requested the hearing provided for under 5 C.F.R. § 713.217, which was conducted by an examiner appointed by the CSC on May 22, 1973, in the Corps office in Mobile. McLaughlin and Mrs. McKaig (the woman whom he dealt with in Personnel) continued to have conflicting thoughts on what actually occurred in the application process. There was a great deal of testimony by Robert Runderson, a black mail clerk who has been with the Corps since 1966. Mr. Runderson knew very little of the circumstances of plaintiff's application but had a great deal to say about general policies of the Corps toward

blacks. He stated that the policy of limiting the area of consideration for positions and the policy of hiring whites only to part-time positions resulted in continued discrimination against minorities. The testimony of the remaining witnesses was cumulative to what had already been developed informally.

The hearing examiner compiled his findings and conclusions and forwarded them to Army Headquarters on July 11, 1973. The examiner found an honest error on someone's part had resulted in plaintiff being considered for the Accountant position instead of the Technician position. The examiner further found no discrimination in limiting the area of consideration to current District employees, despite the fact that there was an acknowledged racial imbalance within the District. This is based on the fact that the position was open to all District employees, regardless of race, and the Personnel Office and Department Supervisor did not know that no blacks would apply. This finding is not corroborated by the evidence. The report of the local officer who first handled this case states that investigation within the District revealed five employees who were qualified for the position of Technician. Obviously, if there was an investigation of potential applicants, the race of those people was known to the persons making the decision to limit the area of consideration. Furthermore, the gross racial imbalance in the Mobile District of the Corps makes the area of consideration racially discriminatory on its face.

A study commissioned by the Department of the Army and conducted in September–October 1972 is part of this administrative file. It deals in part with the situation of the Corps of Engineers

---

5. Ultimately, only one person, the sister of Mrs. McKaig, applied for the position.

6. At the time McLaughlin sought to apply for the Technician post, the position of Accountant was also open. The Technician job was advertised on Vacancy Announcement 169–72; the Accountant position was Va-

cancy Announcement 167–72. The report concludes there was an honest misunderstanding of the application, although there is criticism of the method of applying by phone. Subsequent to this report and the McLaughlin incident, the Personnel Office began to require written confirmation of oral applications.

in Mobile. It reveals that on June 10, 1972, there were 107 black employees in the District out of 1515 employees (approximately 7%). The report details the shortcomings of the Corps in this District and sets out the methods previously employed to discriminate against minorities. As of June 1974, according to the report of the District Engineer, there were 127 black employees in the District (around 8.3%, assuming the overall number of employees was constant). These figures suggest the efforts of the Mobile District of the Corps of Engineers in this regard have been puny.[7] Recognizing this, the Department of the Army required further action by the Mobile District to correct the racial imbalance. (Exhibit 6, Administrative Record). In compliance with this directive, the District no longer limits candidates for vacancies GS-1 through GS-4, or WG-1 through WG-5, which includes the position plaintiff contends he sought, to current District employees. Further corrective actions are detailed in the record (Exhibit 2).

It is ironic to note that if this were a suit in the private sector, the plaintiff would have established a prima facie case of discrimination. It is only fitting that the government take the lead in the battle against discrimination by ferreting out and bringing an end to racial discrimination in its own ranks. The Department of the Army and the Civil Service Commission should closely monitor the situation in this District to ensure compliance with the goal of nondiscrimination. Otherwise, the intent of the Congress to correct discrimination will have been negated by the administrative procedure which it devised to implement its mandate.

The court agrees with the report of the Appellate Review Officer that limiting the area of consideration to current employees is inappropriate in view of the racial imbalance in the District. Fortunately, this device of discrimination for this position has now been eradicated.

Plaintiff made a good faith effort to follow the procedures set out in the regulations. Having failed to receive satisfaction, plaintiff filed this suit because of the "extensive delay encountered . . . in obtaining final administrative action. . . . " (Administrative Record, Letter of Dist. Engineer to Div. Engineer, Exhibit 9). Plaintiff has met his responsibility of following the administrative process and has, at long last, received a final decision from the agency. He has exhausted his remedies. The Department of the Army has come forward with no explanation of its dilatoriness and apparent nonchalance in taking final action. Such delay is deplorable. It appears the plaintiff obtained final action only by instituting this suit.

In spite of this, a trial *de novo* would not be called for except for two unusual circumstances merging at the same time; (1) a racially discriminatory limitation which froze out blacks from consideration, and (2) the misunderstanding which arose was with a person whose sister was an applicant and received the appointment. In other circumstances a trial *de novo* would only result in needless duplication of effort just to move an agency to prompt action.[8]

It is this court's view that Congress intended administrative disposition of Title VII claims with court review subject to exceptions herein indicated.

Because of the unusual circumstances in which the alleged misunderstanding took place concerning plaintiff's application, the court does not believe it can de-

---

7. The court realizes percentages of black to total persons employed for this period would be a better figure indicating numerical improvement.
   Other factors, such as job qualification, would be part of the total consideration.

8. This court does not intend this to be an invitation to delay beyond the 180 day period, see its remarks *supra*, but thinks the court should have the discretionary power to consider a report rendered after 180 days.

termine from the record the truth of what occurred. It is essential that this court see and hear the witnesses testify so that it may evaluate their evidence in attempting to arrive at the truth. Whether or not a bona fide non-discriminatory misunderstanding occurred is the crux of the remaining issues.

It is ordered, adjudged, and decreed that the motion of plaintiff to maintain this suit as a class action is hereby denied.

It is further ordered, adjudged, and decreed that the motion to intervene by Milton Jones, Jr. should be, and is hereby denied.

It is further ordered, adjudged, and decreed that the defendants' motion to dismiss or alternatively for summary judgment is hereby denied and a trial *de novo* on the issues herein indicated is ordered.