Beverly J. RUSSELL

v.

Donald JOHNSON, Administrator, Veterans Administration.

Civ. A. No. 72–780.

United States District Court,
W. D. Pennsylvania.

Jan. 6, 1975.

David B. Washington, Shields & Washington, Pittsburgh, Pa., for plaintiff.

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

OPINION

SCALERA, District Judge.

This civil rights action filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended by § 717 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, comes before the court on defendant's motion for summary judgment. Plaintiff, a former nurse anesthetist for the Veterans Administration, alleges that she was discharged because of racial discrimination.

I

The facts are undisputed. Plaintiff was first employed by the VA on December 8, 1969 as a nurse anesthetist under a three-year probationary period of employment pursuant to 38 U.S.C. § 4106. By letter on November 19, 1971, plaintiff's supervisor, Helen Cronin, Chief Nurse Anesthetist, recommended that plaintiff's employment should be terminated and that the Professional Standards Board should review plaintiff's performance. On December 3, 1971, Dr. Bulent Kirimli, Chief of Anesthesia, evaluated plaintiff's professional conduct and concluded that plaintiff

should be disqualified from continued employment as a nurse anesthetist. And on December 28, 1971, by memorandum, plaintiff was advised that she would not be assigned to her normal operating duties pending clarification of her status.

In response to Miss Cronin's and Dr. Kirimli's actions, plaintiff on January 3, 1972 consulted an Equal Employment Opportunity (EEO) Counselor, John Morris, concerning the prospect of filing a racial discrimination complaint. The EEO Counselor filed a report in which he concluded that plaintiff's proposed discharge was the result of a personality conflict between plaintiff and the operating room staff and not the result of any racial discrimination.

The Professional Standards Board at the VA Hospital, Pittsburgh, recommended on January 11, 1972 that plaintiff be terminated because of her incompatibility with others in the Anesthesiology Department. In Washington, D.C., on February 16, 1972, the Professional Standards Board at the VA Central Office issued an opinion concurring in the findings of the Pittsburgh Professional Standards Board, yet suggesting that because plaintiff's technical ability had been satisfactory, she should be administratively transferred to another location. Plaintiff declined a transfer, without change in grade or salary, to the VA Hospital in Cleveland, Ohio, because she desired to remain in the Pittsburgh area. Plaintiff then declined a transfer to the Neuropsychiatric Section of Pittsburgh's VA Hospital. Having refused to accept either of these two transfers, the plaintiff was discharged from the VA in accordance with the appropriate administrative procedures.

Plaintiff filed a formal complaint with the VA alleging that she had been racially discriminated against by Dr. Kirimli and Miss Cronin. The complaint was referred to the Civil Service Commission, which appointed EEO Appeal Examiner, Ronald Tiberio, to conduct a hearing on plaintiff's charge. The hearing was held on June 6–8, 1972, at which a total of 17 witnesses were called by complainant's representative and a total of 26 exhibits were accepted and made part of the administrative record. On July 28, 1972, the Civil Service Commission issued its findings, analysis, and recommended decision in which it was concluded that no racial discrimination occurred in plaintiff's discharge.

Thereafter, plaintiff filed this action.

## II

■ The critical issue herein is whether the "civil action" referred to in 42 U.S.C. § 2000e–16 [1] grants to a federal employee the right to a trial *de novo* in this court or only the right to a review of the administrative record. We are of the opinion that 42 U.S.C. § 2000e–16 does not entitle a federal employee to a trial *de novo*. After a review of the legislative history [2] of this

1. In enacting the Equal Employment Opportunity Act of 1972, Congress maintained a distinction between the procedure to be followed by a private and a federal employee who complains of alleged employment discrimination. A private employee, upon compliance with limited procedures before the Equal Employment Opportunity Commission (EEOC) has the right to bring a civil action on the merits in the appropriate U. S. District Court. With respect to federal employees, § 2000e–16 provides in pertinent part that:

"(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit . . . or by the Civil Service Commission upon an appeal from a decision or order of such [governmen-

tal] . . . unit on a complaint of discrimination . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint or by the failure to take final action on his complaint, may file a civil action . . . in which . . . the head of the department, agency or unit . . . shall be the defendant."

2. The words of the leading sponsor of the bill, Senator Harrison Williams, support the interpretation that judicial action by the federal courts is limited to the traditional review of the administrative record:

" . . . a provision [enables] an aggrieved Federal employee to file an action in the U. S. District Court for a review of

section of the 1972 Act and the cases[3] concluding that no trial *de novo* is required, we hold that the plaintiff has no right to a trial *de novo*.

Plaintiff's brief refers the court only to the case of Thompson v. Department of Justice, B.N.D.D., 360 F.Supp. 255 (N.D.Calif.1973) for the proposition that a trial *de novo* is required. We note, however, that subsequent to the date of plaintiff's brief, Judge Wollenberg in Thompson v. Department of Justice, B.N.D.D., 372 F.Supp. 762, 763 (N.D.Calif.1974) reversed his original decision and ruled that upon consideration of Hackley v. Johnson, supra, and Handy v. Gayler, supra, there was no right to a trial *de novo*.[4]

Of the cases concluding that a federal employee has no right to a trial *de novo*, we are impressed by the reasoning expressed in Spencer v. Schlesinger, supra, 374 F.Supp. at 844–845:

"There is ambiguous language in the legislative history which lends support to the argument . . . that employees of the Federal Government are to be treated in all respects the same as employees in the private sector, including a statutory right to a trial *de novo*. Such an argument, however, does not withstand close scrutiny.

"The fact is that federal employees and employees in the private sector *are* treated differently by Congress

under Title VII. In the case of the private employee, Congress designated the Equal Employment Opportunity Commission (EEOC) to settle his complaint, but in the case of the federal employee Congress chose another route—*i. e.*, it designated the Civil Service Commission (CSC) to consider the complaint. Where the voluntary informal efforts within the EEOC were unsuccessful in the private sector Congress gave the private employee immediate access to the Court and a trial *de novo*; but where the federal employee felt aggrieved, Congress designated CSC to mediate the dispute *after* the agency had been given the opportunity to put its own house in order. Then and only then Congress allowed the federal employee, where aggrieved on discrimination grounds, to seek review in a district court of the prior administrative action, thus according to the federal employee a right which he did not have prior to 1972—an irrevocable right to enter a federal court. The end result is the same—the federal employee and the private employee are given a day in Court.

"The reason for different administrative treatment is clear. Prior to 1972, a federal employee, unlike his private counterpart, had to surmount a practically insurmountable defense of sovereign immunity before securing a hearing in Court; the private em-

---

the administrative proceeding record after a final order by his agency or by the Civil Service Commission, if he is dissatisfied with the decision." [118 Cong.Rec. 2280 (February 22, 1972)].
The detailed discussion of Senator Williams' statements in Pointer v. Sampson, 62 F.R.D. 689, 692 (D.D.C.1974) illuminates the Congressional intent of this section of the bill and supports our conclusion.

3. The seminal case for the proposition that there is no right to a trial *de novo* is Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C. 1973). The overwhelming majority of cases have followed *Hackley*: Johnson v. United States Postal Service, 364 F.Supp. 37 (N.D. Fla.1973); Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973); Tomlin v. United States

Air Force Medical Center, 369 F.Supp. 353 (S.D.Ohio 1974); Pointer v. Sampson, 62 F.R.D. 689 (D.D.C.1974); Spencer v. Schlesinger, 374 F.Supp. 840 (D.D.C.1974); Baca v. Butz, 376 F.Supp. 1005 (D.N.M.1974); Cates v. Johnson, 377 F.Supp. 1145 (W.D. Pa., filed July 18, 1974), (Gourley, J.); Chandler v. Johnson, 7 (CCH) EPD ¶ 9139 (C.D.Calif.1973), and Gantier v. Weinberger, 6 (CCH) EPD ¶ 9001 (D.D.C.1973).

4. Some of the cases not cited by plaintiff but holding that a trial *de novo* is required are: Henderson v. Defense Contract Administration Services Region New York, 370 F.Supp. 180 (S.D.N.Y.1973); Jackson v. U. S. Civil Service Commission, 379 F.Supp. 589 (S.D. Texas, filed December 13, 1973).

ployee did not face that obstacle. In mandating a right to enter federal court at a given point in time, the discrepancy in treatment was alleviated. However, once in Court, dissimilar treatment again appears. Thus the private sector is generally granted a trial *de novo*, but the Congress has determined that in the usual case a federal employee should redress his grievances in a two-step process, first within the employee's own agency, with CSC review, and thereafter by federal court *review* of such agency and/or CSC action."

■ The limited judicial review standard applicable to federal discharges and personnel actions does not authorize us to reverse the administrative process unless this court finds that the action was arbitrary, unreasonable, capricious, or not supported by substantial evidence. Our limited scope of judicial review is fully completed when the record as a whole discloses substantial evidence in support of the administrative action. Halsey v. Nitze, 390 F.2d 142, 144 (4th Cir.), cert. denied, 392 U.S. 959, 88 S.Ct. 2316, 20 L.Ed.2d 1399 (1968); Polcover v. Secretary of Treasury, 155 U.S.App. D.C. 338, 477 F.2d 1223, 1225–1226 (1973); Charlton v. United States, 412 F.2d 390 (3d Cir. 1969).

■ The administrative record provides ample support for the conclusion that plaintiff's racial discrimination charge was without merit. For example, Dr. Kirimli testified before the EEO Appeals Examiner that he recommended that plaintiff be discharged from the anesthesia team because of her general incompatibility and unreliability. Specifically, Dr. Kirimli referred to an instance (Tr. 231–237) where plaintiff, contrary to his policy, administered a drug to a patient without having attempted to consult a physician. Kirimli stated that his decision was not in any way motivated by racial discrimination; but rather out of his desire, as Chief of Anesthesia, to provide the best patient care by the teamwork of his department.

Dr. Tappan Datta, Assistant Professor of Anesthesia at the University of Pittsburgh, opined that plaintiff's discharge was proper because her personality and her attitude impaired the teamwork of the hospital's Anesthesia Department in the operating room. (Tr. 278) Datta stated that he did not feel that "race discrimination is any where involved in this. It's [the discharge] nothing to do with race." (Tr. 281)

Dr. Peter Safar, who had first-hand knowledge of plaintiff's work, testified that although Miss Russell was a competent nurse anesthetist, she was hostile to authority and a cause of friction in her department. Dr. Safar, who averred that he had been active on behalf of many minority groups, described plaintiff's racial discrimination complaint as "laughable." (Tr. 289)

Esther Caldwell (white), a nurse anesthetist, testified that although she had not observed any overt acts of discrimination by Dr. Kirimli or Miss Cronin, she believed that Miss Cronin was very biased toward the plaintiff and that Cronin had exhibited differential treatment toward the complainant than she had toward the white nurses under her supervision. (Tr. 37) However, the EEO Examiner noted in his report that Miss Caldwell's testimony before him in June, 1972 conflicts with that testimony contained in her March 17, 1972 affidavit given to the VA Investigator, which reads in pertinent part:

"Miss Cronin has become a regular puppet of Dr. Kirimli. Whatever he tells her she does and says. Because of this she has been very unfair to Beverly [the plaintiff] in rating her and in carrying out Dr. Kirimli's orders. However, I cannot say that it was done because of racial discrimination on Miss Cronin's part. I do not know of any instances of which Miss Cronin exhibited racial discrimination" (Investigator Exhibit 4)

A letter (Complainant's Exhibit 2) written by a former (white) nurse anesthetist, Julia A. Shaffer and an affidavit

(Investigator Exhibit 6) submitted by (white) ward secretary, Dorothy Kersting, suggest that Dr. Kirimli's treatment of all employees (good or bad, white or black) was at times extremely brusque and almost ignorant. This evidence controverts the very heart of plaintiff's basic allegation, i. e., that she was treated differently because she is black.

An appropriate order will be entered.

## ORDER

And now, this 6th day of January, 1975;

It is ordered and decreed that defendant's motion for summary judgment be and hereby is granted.