Cyrus A. **NAPPER**, Plaintiff,

v.

C. C. **SCHNIPKE**, Adjutant General of the State of Michigan, and John L. McLucas, Secretary of the Air Force, Defendants.

**Civ. A. No. 4–72428.**

United States District Court,
E. D. Michigan, S. D.

May 1, 1975.

Joel M. Shere, Shere & Klein, Detroit, Mich., for plaintiff.

Samuel J. Behringer, Jr., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action by a federal employee against the Michigan Air National Guard for alleged racial discrimination in employment brought under Title VII of the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16. On defendants' motion for summary judgment, this case is here for

final disposition on the merits. The record for this motion consists of the administrative record compiled in the course of prior proceedings in this matter.

The defendants have moved for summary judgment on the ground that the evidence of record supports the findings of the complaints examiner, adopted by the National Guard Bureau, that plaintiff's allegation of racial discrimination was unsubstantiated by the evidence of record. Conversely, plaintiff opposes the motion and asserts that the Bureau's finding is not supported by the record and that the examiner's findings themselves are deficient in certain particulars.

If the motion for summary judgment is denied, the parties agree that the merits of the matter are before the court for a final decision on the merits. In this connection, the plaintiff also asks the court to consider the deposition of one David Bruton on the theory that the court is empowered to conduct at least a partial *de novo* hearing in this case. 42 U.S.C. § 2000e–16(c) and (d). The administrative record discloses the following facts.

Plaintiff has been employed as an aircraft jet engine mechanic in the Michigan Air National Guard at Selfridge Air Force Base in Mt. Clemens, Michigan. He alleges that he was denied a promotion to Aircraft Jet Engine Mechanic Leader, a position advertised at the base on May 30, 1973, because he is black.[1] Plaintiff applied for the position in June, 1973, along with four other white applicants, one of whom was not minimally qualified and who subsequently was removed from consideration for the position. One Larry Becker received the promotion in the Fall of 1973, but when plaintiff lodged his discrimination complaint, the position was held open subject to investigation by Equal Employment Opportunity specialists.

The nub of plaintiff's claim is that his supervisor in the engine shop at Selfridge, Sgt. LaBrosse, disliked plaintiff because of his race, occasionally referred to him in racially derogatory terms, and harassed him on the job. LaBrosse, as plaintiff's supervisor, was influential in determining who would be promoted to Leader, although the ultimate decision was made by LaBrosse's superior, Major Kimmerly, Chief of Maintenance. Plaintiff contends that, although he was most qualified for the position, LaBrosse recommended Becker for the job because of his racial animosity toward plaintiff.

Plaintiff's discrimination complaint touched off a three-part administrative inquiry conducted by the National Guard Bureau.[2] In October, 1973, an EEO specialist held a series of informal conferences and counseling sessions in an attempt to informally resolve the dispute. The investigating specialist among other things recommended that an impartial board select from among the applicants for the leader position.[3] Dissatisfied with this result, which was outside prescribed procedures, plaintiff

1. Plaintiff initially complained that he was denied promotions to foreman and aircraft technician, as well as a promotion to Aircraft Jet Engine Mechanic Leader. Only the latter position is now at issue in this case.

2. Federal regulations promulgated pursuant to 42 U.S.C. § 2000e–16(b), in addition to stating federal policy on equal employment opportunity in the federal government, provide for a three-step procedure for resolution of discrimination complaints. This procedure includes informal, precomplaint reconciliatory mechanisms, a formal investigatory procedure whereby an impartial investigator explores all aspects of the complaint and takes sworn testimony, and, if upon review of the investigative file a complaint is not adjusted, a formal hearing before a complaints examiner. See 5 C.F.R. §§ 713.201–.222 (1974).

Plaintiff makes no claim of procedural irregularity in the processing of his complaint.

3. The equal employment opportunity specialist responsible for this phase of the inquiry also recommended that time and attendance procedures be revised, that EEO policies and grievance procedures be published at the base, that personnel receive race relations training, and that steps be taken to reconcile personnel difficulties within the engine shop.

filed a formal complaint of discrimination. An impartial investigating officer was assigned to conduct a formal investigation on the merits of plaintiff's claim. This officer reviewed pertinent records of the applicants for the leader position, interviewed and took affidavits from relevant parties at the base, and surveyed the general racial climate at the base. The investigating officer found that, while there was evidence of covert institutional discrimination at the base, there was insufficient evidence of overt discrimination against plaintiff.[4]

Following the formal investigation, plaintiff requested the Civil Service Commission to appoint a complaints examiner for purposes of conducting a formal hearing on the discrimination complaint. This hearing, at which the parties were represented by counsel, was held on July 16, 1974. After review of the hearing transcript and the entire administrative record, including the fruits of the informal and formal investigations, the examiner concluded that plaintiff's "allegation of discrimination due to race is not substantiated by the evidence of the record." The National Guard Bureau adopted the findings and decision of the complaints examiner, and plaintiff filed the present suit.

Three issues are presented in the instant motion for summary judgment: the scope of review and the record on which it is based, the standard of review, and the question of the appropriate disposition of this case in the light of the governing standards.

Specifically, the legal problems presented to this court are these:

1. Is the trial court in review of the administrative proceedings to take new evidence or is it to base its consideration on the record made in those proceedings? In other words, are complaints of discrimination based on race, color, religion, sex, or national origin relating to any aspect of public employment such as hiring, promotion, benefits, or firing to become full-fledged evidential lawsuits in the district court, or should the record made in the public agency be sufficient?

2. Regardless of how the hearing before the court is to be conducted, or on what record it should proceed, what standards should be used in determining the issues of discrimination? Should it be the administrative review standard of affirmance, or should the court look to the usual rules of trials in civil cases and require a preponderance of the evidence on those who have the burden of proof?

## I.

The Equal Employment Opportunity Act prohibits discrimination based on race, color, religion, sex, or national origin in all personnel actions affecting employees or applicants for employment in military departments. The Act empowers the Civil Service Commission to enforce this prohibition through appropriate remedies, including reinstatement and hiring of employees with or without back pay as well as to issue rules, regulations, and orders necessary and appropriate to effectuate its responsibilities. The Act further provides that:

"Within thirty days of receipt of notice of final action taken by a department . . . an employee . . . if aggrieved by the final disposition of his complaint . . .

---

4. The finding of covert discrimination was based upon LaBrosse's undue delay in awarding plaintiff a technical increase in grade, the lack of understanding or concern for equal employment opportunity among supervisors and managers at the base, a failure to post information on discrimination grievance procedure, evidence that Major Kimmerly found plaintiff's use of leave time excessive when the record disclosed otherwise, failure of the Technician Personnel Office to rank and rate qualified applicants for promotions, and management's failure to correct morale problems within the engine shop.

may file a civil action as provided in section 2000e–5 of this title . . . .

"The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder. . . ." 42 U.S. C. §§ 2000e–16(c) & (d).

Except as stated, the Act is silent on the scope and standard of review to be employed in a Title VII action alleging employment discrimination in the public sector. Because the statute involved in this case does not address these issues and because its implication on the business of the District Courts is tremendous, care must be taken to provide answers that accord with the language of the Act and the desires of Congress, yet do not completely overwhelm the courts.

Section 2000e–16(d) of the Act, quoted above, which directs that sections 2000e–5(f) through (k), as applicable, shall govern civil actions brought by federal employees, on its surface would appear to indicate that these actions should be fully independent, new proceedings entitling the parties to make as little or as much additional record as they desire. However, the court concludes that such a reading places undue emphasis on a few words of the statute and ignores the overall thrust of the Act. A construction of the Act which affords the parties an automatic trial *de novo* would have unacceptable implications on both the enforcement of the Act and the business of the district courts.

As pointed out in Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973), there is language in the legislative history of the Act to support either of two conclusions: that Congress intended the Act to provide federal employees the full panoply of rights available to private litigants under Title VII; or that Congress intended the Act only to provide public employees review of the administrative record following a final order by the agency in question or the Civil Service Commission.[5]

However, the entire thrust of the Act, designed to prevent discrimination in public employment in as rapid a manner as possible, in effect requires the court to act as a stand-by agency to assist the primary agency—the Civil Service Commission—in implementing its provisions. The appropriateness of this supervisory role, in contrast to the primary role assumed by the district courts in the private sector of Title VII, is demonstrated by an examination of the functions performed by the Equal Employment Opportunity Commission and the Civil Service Commission within the framework of Title VII.

The difference between the powers of the EEOC in the private sector and the Civil Service Commission in the public sector is striking. The EEOC is an advisory mediating body having power only by way of action brought by it in the courts. The Civil Service Commission is a major administrative body charged with the administration of a policy of non-discrimination in public employment. Clear administrative procedures and remedies are established for internal enforcement of non-discrimination. There is nothing for the court to review in the private sector, but in the public sector the statute, through federal regulations, prescribes a whole series of steps for persons who are aggrieved, permitting at one point alternative access to the court. To require either par-

---

5. *See* 360 F.Supp. at 1251–52; S.Rep.No. 92–415, 92d Cong., 1st Sess. 16 (1971) (History at 425); 118 Cong.Rec. S2280–2281 (daily ed. Feb. 22, 1972) (remarks of Senator Williams) (History at 1727); 118 Cong.Rec. S2287 (daily ed. Feb. 22, 1972) (remarks of Senator Cranston) (History at 1744).

The view that the Act permits a trial de novo is epitomized in the statement of Senator Cranston, who repudiated the opposite position previously attributed to him and asserted: "As with other cases brought under Title VII of the Civil Rights Act of 1964, Federal district court review would not be based on the agency or CSC record and would be a trial *de novo*." 119 Cong.Rec. S1219 (daily ed. Jan. 23, 1973).

ty to assume the burden of a *de novo* hearing on a new or expanded record in the courts would not only sorely burden the litigants and the courts but would subvert the Congressional intent of prescribing and defining explicitly prompt, administrative avenues for the enforcement of non-discrimination in the public sector. This view is supported by Hackley v. Johnson, *supra.*

In *Hackley,* Judge Gesell concluded that the Equal Employment Opportunity Act does not require a District Court to hold a trial *de novo* where a plaintiff employed by the federal government, after unsuccessfully pursuing his administrative remedies, seeks relief from the court to vindicate an individual claim of racial discrimination:

> "Congress clearly left primary responsibility for enforcement of these rights within the Civil Service Commission. A fair reading of the statute shows that the courts and the Commission are to work together and complement one another's weaknesses and strengths. Neither can ignore the role the other plays. Viewing the Act and its history broadly, Congress intended to guarantee *access* to the courts—'a civil action'—to eliminate previous barriers but not to start the process anew. . . ." *Id.* at 1251–52.[6]

For the foregoing reasons, this court concludes that an automatic requirement of trial *de novo* would undermine the statutory scheme which contemplates that the Civil Service Commission and the agencies of the federal government should work closely with the courts to eradicate the vestiges of discrimination in public employment. Accordingly, an examination of the present administrative record without resort to the tendered deposition is appropriate.

## II.

Given the court's conclusion that the Act does not require an automatic trial *de novo* when a federal employee initiates a Title VII action in the district court, the standard of review of the administrative record becomes critical. Is the court to determine if there is substantial evidence in the record to support the finding of the agency or is a different test called for?[7] Considerations similar to those discussed above compel the court to find that an agency's determination must be supported by more than substantial evidence.

The Act provides for eradication of discrimination in public employment through a procedure whereby the Commission and the courts play complimentary roles. In furthering these objectives, the court must both respect the integrity of the administrative process and protect a public employee's right to meaningful access to the district court. The statutory scheme and the purpose of the Act dictate that the court protect the individual rights at stake in federal employee discrimination cases by using a high standard of review.

Congress' decision to incorporate any applicable provisions of sections 2000e–5(f)–(k), via section 2000e–16(d) of the Act, into a federal employee's right to review in the district court supports this analysis. This reference to private sector anti-discrimination procedures, among them the jurisdictional grant empowering the courts to conduct full-scale trials for redress of discrimination in

---

6. A clear majority of courts which have faced this question have concluded that the Act does not require a trial *de novo*. *See, e. g.,* Salone v. United States, 511 F.2d 902 (10th Cir. 1975); Guilday v. Dept. of Justice, 385 F.Supp. 1096 (D.Del.1974); Roney v. Saxbe, 380 F.Supp. 1191 (D.D.C.1974); Cates v. Johnson, 377 F.Supp. 1145 (W.D. Pa.1974); Baca v. Butz, 376 F.Supp. 1005 (D.N.Mex.1974); Tomlin v. Air Force Center, 369 F.Supp. 353 (S.D.Ohio 1974); Handy v. Gayler, 364 F.Supp. 676 (D.Md. 1973). *But see,* Jackson v. Civil Service Commission, 379 F.Supp. 589 (S.D.Tex.1973); Reynolds v. Wise, 375 F.Supp. 145 (N.D. Tex.1974); Henderson v. Defense Contract Admin., 370 F.Supp. 180 (S.D.N.Y.1973).

7. *See, e. g.,* The Administrative Procedure Act, 5 U.S.C. § 701 et seq. (1970).

the private sphere where the burden of proof must be met by a preponderance of the evidence, suggests that a like standard of review be employed in federal discrimination suits.

Although the court has held that a full *de novo* hearing is not called for by these provisions of the law, the standard of proof required by current procedures in the private sector, which procedures are mandated by section 2000e–16(d)' for judicial proceedings involving the public sector, must be complied with. The crucial aspect of the requirement of access to the courts in public sector discrimination suits is directed at the quantum of proof problem.

█ The court holds, therefore, that when a federal employee exercises his statutory right to judicial review, he is entitled to the court's independent examination of the administrative record. From that record the court must determine, based on the same standards used in private discrimination suits, whether the complainant has come forward with proof suggestive of discrimination, and whether in such a case an employer has established an absence of discrimination by a preponderance of the evidence.[8]

### III.

█ A major problem manifested by the lengthy administrative record compiled in this case, integrally related to the standard of review, concerns the allocation of the burden of proof between the parties. As noted above, cases dealing with the order and allocation of proof in private actions challenging employment discrimination under Title VII

should be applicable in public sector suits. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Franklin v. Troxel Mfg. Co., 501 F.2d 1013 (6th Cir. 1974). Those cases mandate the use of a three-step procedure for allocating the burden of proof. First, the complainant must prove a *prima facie* case of employment discrimination.[9] Second, the burden then shifts to the defendant who must "articulate some legitimate, non-discriminatory reason" for the refusal to promote. Third, the complainant must be given the opportunity to prove that an otherwise valid reason might be used as a pretext for discrimination. 411 U.S. at 802–04, 93 S.Ct. 1817; 501 F.2d at 1014–15.

█ This procedure, developed in the context of actions for private discrimination where the primary forum for resolution of the complaint is the District Court, should be no less applicable in actions for public discrimination where the primary forum for resolution of the dispute is the federal agency. Such an approach serves both the purposes of Title VII and meets the need to employ procedural machinery designed to ferret out the various and subtle forms of racial discrimination in public employment. The court holds, therefore, that when a federal employee's discrimination complaint proceeds beyond the informal and formal investigatory stages and a hearing commences, the complaints examiner and the alleged discriminating agency are bound to examine the administrative record in the light of the standards developed in *Mc-*

---

8. Initially, Hackley v. Johnson, *supra*, proposed that an absence of discrimination be demonstrated by the clear weight of the evidence. In assessing the records before him, however, Judge Gesell used a preponderance of the evidence test. 360 F.Supp. at 1251–52, 1253–55. *See* Guilday v. Dep't. of Justice, 385 F.Supp. 1096 (D.Del.1974).

9. Although the Court did not endorse a rigid formula for proving the *prima facie* case under all circumstances, *McDonnell Douglas* in-

dicates that a *prima facie* case may be proved by a complainant's showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. 411 U.S. at 802, 93 S.Ct. 1817.

*Donnell Douglas, supra.* Although plaintiff in this case chose to forego his statutory right to an appeal before the Civil Service Commission prior to bringing this action, the Commission, too, should observe the standards of *McDonnell Douglas* when reviewing the final action of federal agencies on discrimination complaints. An examination of the present administrative record to determine under the principles in *McDonnell Douglas* whether the plaintiff is entitled to relief is now appropriate.

The record leaves no question but that plaintiff has proved a *prima facie* case of racial discrimination in employment. The defendants dispute neither plaintiff's qualifications nor his past work performance at the base. When the investigation of plaintiff's complaint concluded, defendants readvertised the mechanic leader position and continued to solicit applicants with plaintiff's qualifications. Plaintiff did not reapply but chose to press his initial claim. The preponderance of the evidence in the record, virtually unrebutted, indicates that Sgt. LaBrosse was verbally abusive toward plaintiff, unduly critical of his work in the engine shop, and that he generally subjected plaintiff to treatment different than that accorded the white mechanics in the shop. Moreover, the recommendations of this superior weighed heavily in Major Kimmerly's decision to promote Becker rather than plaintiff.

At this point, at the very least, the burden should have shifted to the National Guard Bureau to "articulate some legitimate, non-discriminatory reason" for their refusal to promote plaintiff. Not only did the Bureau fail to do this, the complaints examiner also failed to perceive in his examination of the record that, plaintiff having established a *prima facie* case, it was incumbent upon defendants to put forth some articulable, non-discriminatory justification for the promotion of Becker over plaintiff.[10]

The sole rationale advanced by plaintiff's superiors as cause for his non-promotion consisted of Major Kimmerly's sworn statements to the EEO investigating officer during the second phase of the administrative inquiry wherein Kimmerly indicated that he was swayed from the other applicants toward Becker because of "the reliability factor". Relative to attendance, for example, he deemed plaintiff the least dependable and illustrated that by plaintiff's use of unscheduled emergency leave time. Yet the record discloses that plaintiff's use of leave time was not excessive. Indeed, the investigating officer felt that the non-dependability issue was a pretext to justify non-selection of the best qualified individual.[11] When the question of

10. The complaints examiner found that whether plaintiff or one of the other applicants should have been selected for the leader position was a moot issue because the record did not show that the Technician Personnel Office of the Michigan National Guard screened all of the applicants for minimum qualifications. The examiner noted that the leader position was still vacant, having been cancelled pending the outcome of the discrimination investigation.

The failure of the personnel office to screen the applicants was not a significant issue in the record until the examiner brought it up. Defendants have not disputed plaintiff's minimum qualifications for the position he seeks. Insofar as the examiner concluded that cancellation mooted plaintiff's non-selection, the examiner appears to have ignored the possibility that if, but for the alleged discrimination, plaintiff would have been promoted, issues of back pay, seniority, and lost employment opportunity would be affected.

The examiner did proceed to explore briefly plaintiff's allegations and found that plaintiff's difficulties within the engine shop were largely due to a personality conflict between plaintiff and Sgt. LaBrosse. The examiner found that LaBrosse was equally abusive towards all the mechanics in the engine shop.

11. The EEO investigator, in making his findings, declared:

"The investigator, in questioning Major Kimmerly asked why Sgt. Napper was not considered dependable by him. . . . The Major indicated that it was related to attendance and further indicates that Sgt. Napper's use of unscheduled leave was ex-

plaintiff's dependability emerged at the hearing, the complaints examiner stated that he would assess the comparative attendance statistics for himself, but he failed to make findings in this regard. Further, the record is vague on precisely how the selection was made once the minimal qualifications of the applicants were determined. Neither Kimmerly nor LaBrosse recalled which of them recommended Becker's promotion.

■ In view of plaintiff's more than *prima facie* showing of discrimination, the minority imbalances existing in employment at the base, and the general lack of understanding at Selfridge with respect to equal employment opportunity policies, plaintiff was clearly entitled to a more cogent explanation for his nonselection than that which he received. Defendants fell far short of coming forward and disproving plaintiff's accusation by a preponderance of the evidence. Accordingly, the court finds that this record does not establish an absence of discrimination by a preponderance of the evidence. Defendant's motion for summary judgment is denied.

## IV.

The remaining issue in this case concerns the implementation of appropriate relief. Were this action brought here after an appeal to the Civil Service Commission, a remand to the Commission for reconsideration under the correct standards might be proper. Plaintiff, however, bypassed the Commission and took a direct route to this court when informed of the final action taken on his complaint by the National Guard Bureau. In a sense, the court now stands in the position of the Commission.

> cessive. When asked what he (Major Kimmerly) considered excessive he replied three or four emergency leave days a month. The investigator pointed out that the record showed that Napper had only taken six unscheduled annual leave days in three years."
>
> Report of Investigation, Findings, at 9.

■ The court declines to remand this case for reconsideration by the National Guard Bureau. Remand now would ill-serve the Congressional purpose of affording prompt disposition of discrimination complaints and would result in additional, burdensome expense to the parties. Supplementation of the record by additional evidence taken either in this court or before the Bureau would have the same effect and likely would cumulate the testimony now a part of the record. The court concludes that this is a proper case for granting plaintiff relief on the administrative record.[12] Therefore, defendants are directed to promote plaintiff to the position of Aircraft Jet Engine Mechanic Leader and to grant plaintiff back pay, seniority rights, and fringe benefits in accordance with applicable regulations.[13]

So ordered.

12. Judge Gesell endorsed this approach in Hackley v. Johnson, *supra*, where he declared that, if the record does not affirmatively establish an absence of discrimination, the court should in its discretion, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record. *Id.* at 1252.

13. See 5 C.F.R. § 713.271(b) (1974).